Submitted October 31, 2014, affirmed April 22, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

HASSAN ALI FREIH,
*Defendant-Appellant.*

Washington County Circuit Court
C112594CR; A153893

348 P3d 324

Peter Gartlan, Chief Defender, and Kyle Krohn, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Michael S. Shin, Senior Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Wollheim, Senior Judge.

LAGESEN, J.

## LAGESEN, J.

Defendant failed to appear for a court date in connection with misdemeanor charges against him and, as a result, was charged and convicted of one count of failure to appear in the second degree, in violation of ORS 162.195(1)(a).[1] On appeal, he assigns error to the trial court's pretrial ruling that he was not entitled to raise a choice-of-evils defense under ORS 161.200, and would not be entitled to a jury instruction on the choice-of-evils defense; defendant sought to defend against the charge on the ground that, in the light of his mother's medical condition, he had no choice but to miss his court date. We affirm.

We review the trial court's ruling that defendant would not be entitled to an instruction on the statutory choice-of-evils defense for legal error, viewing the record in the light most favorable to defendant to determine whether a jury permissibly could find the statutory elements of the defense from the facts[2] or evidence contained in the record. *State v. Boldt*, 116 Or App 480, 483, 841 P2d 1196 (1992); *State v. Matthews*, 30 Or App 1133, 1136, 569 P2d 662 (1977). "[A]n affirmative defense to a criminal charge may be withdrawn from the jury's consideration only if there is no evidence in the record to support an element of the defense." *State v. Brown*, 306 Or 599, 605, 761 P2d 1300 (1988).

---

[1] ORS 162.195(1) provides, in part:

"(1) A person commits the crime of failure to appear in the second degree if the person knowingly fails to appear as required after:

"(a) Having by court order been released from custody or a correctional facility under a release agreement or security release upon the condition that the person will subsequently appear personally in connection with a charge against the person of having committed a misdemeanor[.]"

[2] Here, the trial court resolved the issue of defendant's entitlement to present the statutory choice-of-evils defense pretrial, on the state's motion *in limine* to preclude defendant from raising the defense. The parties both agreed that it was appropriate for the trial court to resolve the issue of defendant's entitlement to raise the defense pretrial, and defendant did not re-raise the issue during trial. Accordingly, the relevant record for our review consists of defendant's pretrial offer of proof regarding the facts that he would testify to at trial if allowed to present the defense, and we do not consider defendant's trial testimony in evaluating whether defendant presented sufficient evidence to permit him to pursue the defense. *See State v. Pitt*, 352 Or 566, 581, 293 P3d 1002 (2012) (determining trial court error "[i]n light of the record that existed when the trial court addressed the motion *in limine*").

ORS 161.200 sets forth the elements of the statutory choice-of-evils defense. It provides, in pertinent part:

"(1)   Unless inconsistent with other provisions of chapter 743, Oregon Laws 1971, defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when:

"(a)   That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and

"(b)   The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue."

ORS 161.200(1). As we have explained, to be entitled to an instruction on the defense, defendant had to offer evidence sufficient to allow the jury to find

"(1) his conduct was necessary to avoid a threatened injury; (2) the threatened injury was imminent; and (3) it was reasonable for him to believe that the need to avoid that injury was greater than the need to avoid the injury that ORS [162.195], the statute that he was found to have violated, seeks to prevent."

*Boldt*, 116 Or App at 483.

Among other things, to show that criminal conduct was "necessary" within the meaning of ORS 161.200, defendant was required to put forth evidence that would allow the jury to find that he had no reasonable alternative but to commit the crime: "[F]or a defendant's conduct to be 'necessary' to avoid a threatened injury, he must show that no other course of action was available to him but to 'choose an evil.'" *State v. Miles*, 197 Or App 86, 93, 104 P3d 604 (2005). To show that the injury that the defendant sought to avoid was "imminent" within the meaning of the statute, defendant was required to show that the threat of injury existed *at the time* that defendant committed his offense. *Boldt*, 116 Or App at 483-84. Because defendant's offense was failure to appear for a required court date, that means defendant was required to put forth evidence that would allow a jury

to find that the alleged threat of injury "existed on the day that defendant was scheduled to appear[.]" *Id.* at 484.

In his offer of proof in support of his claimed entitlement to present a choice-of-evils defense, defendant indicated that he would testify to the following facts at trial if he were permitted to pursue the defense:

Defendant's 91-year-old mother lives in Jordan. Approximately two weeks before his scheduled court date, defendant received a phone call from his aunt in Jordan. Defendant's aunt informed him that his mother was severely ill and had had a stomach operation that had become infected, leading to other medical issues. Defendant's mother also had hearing problems, could not walk, was in pain and was taking multiple medications. Defendant's family members in Jordan were taking care of defendant's mother. They wanted defendant to travel to Jordan and assist them in taking care of her. Defendant called his attorney's office, but was informed that his attorney was on vacation for two weeks. Defendant also contacted the trial court, but was told to "talk to [his] lawyer to deal with it." Defendant nonetheless immediately flew to Jordan. Defendant did so because he "love[s] [his] mom and *** wanted to assist her." He did not return for his court date two weeks later, but, instead, remained in Jordan for three months.

On appeal, defendant argues—as he did below—that that evidence as to why he missed his court date was sufficient to entitle him to present a choice-of-evils defense to the charge of failure to appear and to receive a jury instruction on that defense. In particular, defendant argues that the evidence would be sufficient to permit a factfinder to find that it was necessary for defendant to commit the crime of failure to appear as an emergency measure "in order to avoid the psychological harm of failing to care for his ailing mother."[3]

---

[3] Below, defendant also posited that his criminal conduct of failure to appear also was necessary to avoid the physical injury that his mother would suffer if defendant was not in Jordan to care for her. On appeal, defendant has abandoned the argument that his criminal conduct was necessary to avoid physical injury to his mother and argues only that it was necessary to avoid a psychological injury to himself.

We disagree. We assume without deciding that a threatened psychological harm to a defendant or a third party could, in some circumstances, qualify as a "private injury" within the meaning of ORS 161.200(1)(a) that would support the giving of an instruction on the choice-of-evils defense if the other criteria for the defense are met. *See* Paul H. Robinson, 2 *Criminal Law Defenses* § 124(b)(1), 47-48 (1984) ("deprivation of a defendant's opportunity to see his dying mother" could potentially qualify as an injury under the choice-of-evils defense). However, even accepting that the claimed psychological harm would be sufficient to invoke ORS 161.200, defendant's offer of proof was insufficient to establish entitlement to a jury instruction on the choice-of-evils defense because it was insufficient to permit a finding either that it was "necessary" for defendant to miss his court date in order to avoid that threatened psychological harm, or that that threatened psychological harm remained "imminent" as of defendant's court date, as those terms have been construed by our court.

Regarding whether it was "necessary" for defendant to commit the crime of failure to appear in order to avoid the psychological harm resulting from not caring for his mother, defendant's offer of proof would not permit a juror to find that defendant had "no other course of action" available to him but to commit the crime in order to stave off the potential harm. To the contrary, the offer of proof affirmatively suggests that defendant could have appeared for his court date *and* avoided the psychological harm of not caring for his mother by traveling to Jordan when he did, returning for his court date two weeks later, and then traveling back to Jordan to provide further care for his mother. The offer of proof indicates both that defendant's mother was not facing imminent death, and that other family members were available to care of defendant's mother when he was not available—circumstances which would have allowed for defendant to fulfill his obligations to both his mother and the court, thereby avoiding both psychological harm and committing the crime of failing to appear. In all events, defendant's offer of proof was insufficient to permit a finding that such an option was *not* reasonably available to defendant; defendant provided no testimony whatsoever as to why his mother's condition

was such that he would be unable to fulfill his care obligations to her (thereby avoiding the psychological harm of not doing so) if defendant returned to the United States for his court date, or as to why such travel was not a reasonably available option. Without such evidence, no reasonable juror could find that defendant, in fact, "had no other course of action" but to choose the "evil" of committing the crime of failure to appear.

Regarding whether the psychological harm of failing to care for his mother was "imminent" within the meaning of ORS 161.200—that is, that the threatened harm existed *on* the date that defendant committed the crime of failure to appear, defendant presented no evidence that would allow a jury to find that that threat of harm persisted on the date that defendant failed to appear—two weeks *after* defendant left for Jordan upon receiving his aunt's phone call. Defendant's offer of proof consisted solely of testimony that, two weeks before his trial date, he learned that his mother had an infection and needed his care at that time. The offer of proof provided no information concerning defendant's mother's health status on the date that defendant failed to appear and, thus, would not permit a finding that the threat of psychological harm that caused defendant to travel to Jordan two weeks earlier persisted at (or shortly before, given the evident travel considerations) the time of defendant's court date.[4] Absent such evidence, it would be speculative for a jury to find that defendant remained under a threat of "imminent" psychological harm at (or shortly before) the time that defendant committed the charged offense of failure to appear.

Affirmed.

---

[4] In the offer of proof, defendant testified that he remained in Jordan for three months, but he did not testify whether he stayed that long because of his mother's health condition or for other considerations.