Submitted April 30, 2014, affirmed February 3, petition for review denied May 26, 2016 (359 Or 667)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**TYLER DEAN DEWHITT,**
*Defendant-Appellant.*

Washington County Circuit Court
C110276CR, D110410M;
A151082 (Control), A151083

368 P3d 27

Peter Gartlan, Chief Defender, and Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Tiffany Keast, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Flynn, Judge, and Haselton, Senior Judge.*

_____

* Flynn, J., added pursuant to ORS 2.570(2)(b); ORS 2.570(3).

HASELTON, S. J.

## HASELTON, S. J.

Defendant appeals judgments of conviction for harassment and unlawful possession of marijuana. Those offenses were charged in separate charging instruments that were joined for trial under ORS 132.560. In his first assignment of error, defendant argues that the trial court erred both in joining the charging instruments and also in denying his motion to sever them. In his second assignment, defendant argues that the trial court erred in granting the state's motion *in limine* barring him from asserting a "choice-of-evils" defense with respect to marijuana possession. As amplified below, we conclude that the trial court did not err with respect to any of those challenges. Accordingly, we affirm defendant's convictions.

We begin by describing the circumstances leading up to defendant's arrest and the procedural facts relevant to this appeal.[1] On February 6, 2011, defendant, his 17-year-old sister, and W, who was dating defendant, left W's mother's home in a car that W's mother owned and allowed her to use. Defendant was driving, W was in the front passenger seat, and defendant's sister was seated in the back. A backpack containing marijuana and smoking paraphernalia, which W and defendant later acknowledged belonged to defendant, was in the back seat.

Defendant and W got into a "heated" argument, and defendant punched the dashboard. Defendant's sister then repeatedly punched W in the back of her head. In an attempt to exit the vehicle, W pulled the emergency brake, but defendant pulled the brake lever back down and continued driving. The altercation continued, and, as a result, coffee spilled all over W and her tooth was chipped, apparently from being hit, punched, or possibly accidentally bumped by defendant. After those events, W made defendant pull over. W got out of the car, walked to a nearby convenience store, and called her mother. Defendant and his sister drove away.

---

[1] In reviewing defendant's second assignment of error, concerning whether he was entitled to assert the choice-of-evils defense to the marijuana-related charges, we view the facts in the light most favorable to defendant. Our analysis of that issue below supplements the factual narrative in accordance with that standard.

When W's mother got to the convenience store, she found W upset and covered in coffee, with a bloody face and a broken tooth. W's mother promptly called 9-1-1, reporting, "My daughter's boyfriend took off with their car, hit her in the face, broke her tooth." The police arrived shortly thereafter. According to the trial testimony of her mother and the officers who interviewed her at the scene, W told them that defendant had punched her.

After letting W out at the convenience store, defendant and his sister had circled back to W's mother's home. An officer drove there and interviewed defendant, who denied having any physical contact with W during the altercation.

The officer searched the car and discovered evidence of a struggle (blood and spit "kind of all over the place"). He also noticed, in plain view, an "open backpack on the floorboard of the passenger's side," which contained a glass Mason jar full of marijuana, and a pouch with a digital scale and "measuring spoons" inside. After seizing the evidence, the police determined that the jar contained 44.7 grams, or about 1.6 ounces, of marijuana. Defendant admitted that the marijuana was his.

Based on those events, defendant was charged with four crimes in two separate charging instruments. The indictment in Washington County Case No. C110276CR charged one count of unlawful delivery of marijuana, ORS 475.860, and one count of unlawful possession of marijuana, ORS 475.864, alleging:

> "The defendant, on or about February 6, 2011, in Washington County, Oregon, did unlawfully and knowingly deliver a controlled substance, to-wit: marijuana, for consideration.
>
> "* * * * *
>
> "The defendant, on or about February 6, 2011, in Washington County, Oregon, did unlawfully and knowingly possess the controlled substance marijuana, in an amount greater than one avoirdupois ounce contrary to the statutes and against the peace and dignity of the State of Oregon."

In Washington County Case No. D110410M, defendant was charged with one count of fourth-degree assault, ORS 163.160, and one count of harassment, ORS 166.065. That charging instrument alleged:

"The defendant, on or about February 6, 2011, in Washington County, Oregon, did unlawfully and recklessly cause physical injury to [W]. The State further alleges that the above described crime constitutes domestic violence.

"The defendant, on or about February 6, 2011, in Washington County, Oregon, did unlawfully and intentionally harass and annoy [W], by subjecting [W] to offensive physical contact contrary to the statutes and against the peace and dignity of the State of Oregon."

At a pretrial conference, the state moved to consolidate, or join, those two charging instruments for trial on the ground that both "ar[o]se out of the same act and transaction" and because, "under OEC 404(3), evidence in C110276CR is relevant to D110410M." *See* ORS 132.560(1)(b)(B).[2] The trial court granted the motion *pro forma*. Later, at a pretrial hearing, the defense orally challenged the consolidation and moved to sever under ORS 132.560(3), arguing both that the cases did not meet the statutory requisites for joinder and that, in any event, trying them together would be substantially prejudicial.

The trial court ruled out various potential grounds for joinder, including the rationale supplied by the original order granting joinder, expressly concluding that ORS 132.560(1)(b)(B) was inapposite. The court further determined that joinder was nevertheless appropriate under ORS 132.560(1)(b)(C), which permits the joinder of charges for trial based on "two or more acts or transactions connected together or constituting parts of a common scheme or plan." The court reasoned:

"I think that [subparagraph] C has more than one meaning. [Subparagraph] C is '[b]ased on two or more acts or transactions connected together or constituting parts of a common scheme or plan.' I'd be willing to state that just

---

[2] ORS 132.560, which governs the joinder and severance of counts and charges, is recited in full and discussed in our analysis below.

based on the face of it that it doesn't necessarily rise to a common scheme or plan.

"But are they connected together? And I think the answer is yes, they're connected together by the time and by the witnesses, investigation, and that that's sufficient for them to remain consolidated. It's true, it's absolutely true that it creates those kind of logistical decisions that a defense has to make. But that doesn't bar it from being tried together."

Thus, the trial court's conclusion that joinder was appropriate rested solely on the "connected together" genre of joinder.

With respect to the separate, but related, issue of severance, the trial court denied defendant's motion to sever, determining that defendant would not be substantially prejudiced by the joinder of the two sets of charges. The trial court acknowledged that there was some risk of prejudice, but stated that it did not rise to the level of substantial prejudice. It reasoned that defendant would "still [be] in a position to be able to testify, if he wants to, and limit the kinds of things he testifies to and thus is cross-examined on, to whatever he [previously] testifies about." In particular, the trial court noted that, if defendant chose to testify about medical marijuana-related matters in connection with the marijuana possession and delivery charges, that testimony would not open the door for the prosecution to question him concerning the fourth-degree assault and harassment charges.

In addition, at a pretrial hearing, the defense announced that it intended to assert a choice-of-evils defense to the charges involving marijuana, *see former* ORS 475.319(3) (2013), *renumbered as* ORS 475B.480(3) (2015), and ORS 161.200, and the state moved to bar defendant from doing so.[3] As described more fully below, 276 Or App at 388-89, the trial court held a hearing relating to the putative presentation of such a defense. Ultimately, the court granted the state's motion and barred defendant from

---

[3] In addition to the choice-of-evils defense, the defense also announced its intention to assert the medical marijuana affirmative defense available under *former* ORS 475.319(1). That matter is not at issue in this appeal because the defense withdrew its request to assert that defense.

asserting the choice-of-evils defense. However, the trial court indicated that it would allow defendant to present limited evidence of his alleged medical marijuana use to the extent that it was relevant to the defense theory that he possessed the marijuana solely for personal use and was not a drug dealer.

At trial, W testified, recounting the events described above, including about the altercation in the car and defendant's concurrent possession of the marijuana. As a witness for both the state and for the defense, she was repeatedly questioned about those events. The investigating officers also recounted their concurrent discovery of the evidence of both the altercation and of the marijuana and paraphernalia in the vehicle.

The jury found defendant guilty of harassment (Count 2 in Case No. D110410M) and unlawful possession of marijuana (Count 2 in Case No. C110276CR). The court granted defendant's motion for judgment of acquittal on the marijuana delivery charge, and the jury acquitted defendant of fourth-degree assault.

On appeal, defendant assigns error both to the joinder of the charges for trial and to the denial of his motion to sever. We begin with a brief overview of ORS 132.560, the statute which governs both of those issues, and then address each issue in turn. After resolving those matters, we turn to defendant's challenge pertaining to whether he was entitled to assert the choice-of-evils defense.

ORS 132.560 sets out circumstances in which multiple charges "may or are required to be tried together and, conversely, when they may or must be tried separately." *State v. Isbell*, 178 Or App 523, 531, 38 P3d 272 (2001). It provides, in relevant part:

"(1) A charging instrument must charge but one offense, and in one form only, except that:

"* * * * *

"(b) Two or more offenses may be charged in the same charging instrument in a separate count for each offense if the offenses charged are alleged to have been committed by the same person or persons and are:

"(A)  Of the same or similar character;

"(B)  Based on the same act or transaction; or

"(C)  Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

"(2)  If two or more charging instruments are found in circumstances described in subsection (1)(b) of this section, the court may order them to be consolidated.

"(3)  If it appears, upon motion, that the state or defendant is substantially prejudiced by a joinder of offenses under subsection (1) or (2) of this section, the court may order an election or separate trials of counts or provide whatever other relief justice requires."

(Emphasis added.)

Thus, under ORS 132.560, permissive joinder of multiple offenses and of multiple charging instruments involves several procedural steps. The court must first determine whether the charges meet any of the independently sufficient bases for joinder listed in ORS 132.560(1)(b)(A) to (C). If so, they may be consolidated. Then, "either party may move the court to sever the offenses [or charging instruments] on a showing that it is 'substantially prejudiced' by the joinder. The court may then exercise discretion to order separate trials or 'whatever other relief justice requires.'" *State v. Johnson,* 199 Or App 305, 314, 111 P3d 784, *rev den,* 339 Or 701 (2005) (citations omitted).

We begin with the threshold issue of whether the charging instruments were properly joined, a legal determination subject to review for errors of law. *State v. Thompson,* 328 Or 248, 256-57, 971 P2d 879, *cert den,* 527 US 1042 (1999).[4] Here, two separate charging instruments were joined

_____

[4] The state points out that in *State v. Norkeveck,* 214 Or App 553, 560, 168 P3d 265 (2007), *rev den,* 344 Or 558 (2008), we stated that "[w]hether joinder of offenses for trial is allowable under ORS 132.560 is a matter of discretion, and we review for abuse of discretion"—a statement that is incompatible with the Supreme Court's controlling statement of the standard of review in *Thompson,* 328 Or at 257 ("[W]e review a trial court's determination that the state met the statutory requirements for joinder of charges for legal error."). We have otherwise followed *Thompson. See, e.g., Johnson,* 199 Or App 305; *State v. Wittwer,* 214 Or App 459, 166 P3d 564 (2007) (both adhering to the legal error standard of review pursuant to *Thompson*). Accordingly, we disavow *Norkeveck's* casting of the standard of review.

for trial pursuant to ORS 132.560(2), which, in turn, incorporates the requirements set out in ORS 132.560(1)(b). As noted, the trial court determined that the charges satisfied ORS 132.560(1)(b)(C) because they were "connected together" "by the time and by the witnesses [and] investigation"—and ruled out all other possible grounds for joinder, including the other independently sufficient basis for joinder set out in ORS 132.560(1)(b)(C) ("common plan or scheme"). *See* 276 Or App at 377-78.

On appeal, defendant argues that, in order for the marijuana and harassment charges to be properly joined as "connected together" under *Johnson* and *State v. Wittwer*, 214 Or App 459, 166 P3d 564 (2007)—which we discuss at length below—the charges must have "significant overlapping proof," in the sense that evidence of one must be "necessary" to proving the other. Defendant asserts that the state failed to demonstrate that connection as a matter of law.

The state defends the trial court's rationale and argues that, beyond overlapping proof, diverse charges can be "connected together" by temporal, spatial, and investigatory nexuses. It maintains that the charges against defendant were connected together by "time, place, operative facts, and witnesses," because they occurred "at the same time and in the same place," in that evidence of both crimes was gathered by "the same officers in a single search," and the same witnesses would be required to try both offenses. The state also emphasizes that ORS 132.560(1)(b)(C) was enacted in order to expand the availability of joinder, and that the joinder of charging instruments for simultaneously investigated offenses serves judicial economy.

Thus, as framed by the trial court's conclusion and the parties' arguments, our analysis implicates the meaning of the statutory term "connected together" and requires us to decide whether the trial court erred when it concluded that the domestic assault and marijuana-related charges were "[b]ased on two or more acts or transactions connected together." For the reasons that follow, we agree with the state, and conclude that the trial court did not err in joining the charges.

At the outset, we note, and reiterate, the overarching principle that "ORS 132.560(1) is to be broadly construed in favor of initial joinder." *State v. Staley*, 142 Or App 583, 589, 923 P2d 650 (1996), *rev den*, 324 Or 560 (1997). That principle is grounded in the legislature's intent, as expressed in legislative history. That history demonstrates that, in enacting permissive joinder provisions—including the "connected together" term of ORS 132.560(1)(b)(C)—the legislature intended to promote the goals of trial economy and judicial efficiency.

The legislature enacted the operative provisions of ORS 132.560 in 1989, as House Bill (HB) 2251. Or Laws 1989, ch 842, § 1. HB 2251 substantially expanded the availability of permissive joinder in criminal cases, essentially bringing Oregon's previously narrow approach into conformance with the broader approach of the federal rules and the vast majority of states. According to proponents of the bill, that revision was meant to reduce the occurrence of multiple trials for multiple related crimes committed by a single defendant—and to reduce costs and eliminate redundancies throughout the criminal justice process. *See* Testimony, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2251, Jan 13, 1989, Ex B (testimony of Cory Streisinger, Legal Counsel to the Governor, testifying that the bill would reduce "clogged court dockets" and indigent defense costs). In addition, proponents sought to significantly reduce the number of instances in which key witnesses, particularly victims, would be subjected to the "undue and repeated stress" of testifying in multiple trials. Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2251, Jan 13, 1989, Tape 2, Side A (statement of Will Hinkston, Oregon State Sheriff's Association). Law enforcement proponents further emphasized that the cost of requiring officers to testify in multiple trials was too high under the status quo, and proposed HB 2251 as a means to allow law enforcement agencies to more efficiently utilize their resources. *Id.* (statement of Vic Mann, Eugene Police Department).

With those principles and goals in mind, our more particular consideration of the meaning, and limits, of ORS

132.560(1)(b)(C) is substantially informed by *Johnson*, 199 Or App 305, and *Wittwer*, 214 Or App 459.

In *Johnson*, the defendant was charged in connection with the robbery and shooting death of the victim. 199 Or App at 307. The state presented evidence that the defendant and a codefendant went to the victim's apartment to rob the victim of methamphetamine and money and that, during the course of the robbery, the defendant pistol-whipped and then shot the victim. *Id.* The defendant was also charged with drug manufacturing, "based on a marijuana growing operation that police found in his apartment three weeks after [the defendant was arrested for] the murder." *Id.* Before the trial court, the defendant unsuccessfully contended that it was improper to join the drug manufacturing charge with the charges relating to the murder and robbery.

On appeal, we concluded that allowing joinder under those circumstances was error. In construing the meaning of ORS 132.560(1)(b)(C), we turned to legislative history, which showed that the text of that provision was "taken directly from the then-existing version of Federal Rule of Criminal Procedure (FRCP) 8(a)" and was meant to expand its scope by "bring[ing] Oregon joinder law into conformance with the federal rules," and that "those who deliberated on the bill explicitly acknowledged the usefulness of the federal case law interpreting the rule." *Id.* at 316-17.

Consistently with that understanding, we adopted a broad formulation derived from *United States v. Anderson*, 642 F2d 281, 284 (9th Cir 1981), and held that joinder under ORS 132.560(1)(b)(C) is appropriate if "the joined counts [or charges] are logically related, and there is a large area of overlapping proof" between them. *Johnson*, 199 Or App at 317.

In applying that formulation to the circumstances in *Johnson*, we reasoned that, in contrast to *Anderson*, where the Ninth Circuit had held that narcotics conspiracy and tax evasion counts were properly joined because "the narcotics revenue was precisely the income that the defendant failed to report on his taxes," *id.*, the offenses in *Johnson* were only tenuously connected by the fact that they both involved controlled substances:

"Conversely [to *Anderson*], in the present case, the 'overlapping evidence' is very slight and, aside from the attenuated relationship between defendant's drug manufacturing and the state's theory concerning his motive to rob [the victim], there were no interlocking facts that would suggest a logical relationship between the two offenses. For example, there is no evidence that defendant's marijuana growing operation was part of the same illicit business enterprise as Enriquez's methamphetamine dealings, that is, that Enriquez marketed defendant's product. In sum, there are no acts or transactions underlying both the marijuana production and the rest of the offenses that are 'connected together' * * * so as to justify joinder of the drug manufacturing charge under ORS 132.560(1)(b)(C)."

*Johnson*, 199 Or App at 317-18. Thus, although the "connected together" construct is broad, it is not so broad as to permit the joinder of charging instruments containing offenses that may somehow be tangentially related, but, for all practical purposes, are "factually alien" to each other, and where the overlapping evidence is "very slight." *Id.* at 316-17.

In *Wittwer*, we applied *Johnson*'s construction of "connected together" to a situation in which several charging instruments involved multiple incidents that were contextually related, but occurred at different times and places. The defendant had initially been charged with several crimes in connection with a May 10 physical altercation with his companion. After he failed to attend his May 14 arraignment on the first set of charges, the defendant was also charged with failure to appear. On May 25, the defendant engaged in additional violence toward his companion in retaliation for her grand jury testimony pertaining to the May 10 incident, and was charged with several additional crimes. 214 Or App at 461. All of those charges were joined for trial over the defendant's objections. *Id.* at 462.

On appeal, relying on *Johnson*'s construction of ORS 132.560(1)(b)(C), we concluded that the joinder was proper. We reasoned that the later in time charges were logically related because "both sets of charges spring from the May 10 events," evidence of which was "necessary to prove the failure to appear charge and to explain the context and motivation for the [later occurring] events." *Id.* at 463. Thus,

*Wittwer* provides one example of a "logical relationship"—where later charges stem from, or are otherwise precipitated by, an earlier charge—that gives rise to a determination that charging instruments are "connected together" under ORS 132.560(1)(b)(C).[5]

At least in some respects, *Johnson* and *Wittwer* could be viewed as representing polar extremes on the "connected together" continuum. In *Johnson*, there was no material logical or evidentiary connection between the murder and robbery charges on one hand and the marijuana manufacturing charge on the other. 199 Or App 305. Conversely, in *Wittwer*, joinder was predicated on the inextricably intertwined causal nexus of various offenses "spring[ing] from" the same initial events. 214 Or App at 463. The circumstances of this case, albeit not so stark as those in *Wittwer*, nevertheless were sufficient to establish the requisite "connected together" nexus. Our holding in that regard derives from the combination of the temporal and spatial concurrence of the offenses, the circumstances of their investigation, and the very substantial overlap of material witnesses.

The predicate criminal conduct for both charges occurred and was investigated concurrently. Defendant possessed the marijuana at the same time and in the same space that he harassed W. The police responded to the call about the altercation in the car, and, while searching the car in connection with that investigation, discovered physical evidence of the altercation as well as the marijuana and marijuana paraphernalia. Thus, the harassment and marijuana charges had a temporal and a spatial connection, and were additionally materially linked by the fact that evidence of both charges was discovered in the same search.

---

[5] That approach is consistent with federal law and with other jurisdictions whose permissive joinder rules, like Oregon's, are modeled after FRCP 8. *See, e.g., United States v. Ritch*, 583 F2d 1179, 1181 (1st Cir), *cert den*, 439 US 970 (1978) ("It is well established that a charge of bail jumping or escape may be deemed sufficiently 'connected' with a substantive offense to permit a single trial, at least where the charges are related in time, the motive for flight was avoidance of prosecution, and appellant's custody stemmed directly from the substantive charges."); *State v. Bingman*, 229 Mont 101, 110, 745 P2d 342, 346-47 (1987) (affirming joinder of assault and tampering with evidence charges because the assault charge clearly precipitated the tampering charge).

*See State v. Strouse*, 276 Or App 392, 402-03, 366 P3d 1185 (2016) (joinder of theft and marijuana-related charges was proper where, *inter alia*, evidence linking the defendant to stolen property from an earlier burglary was found at the same time and place as evidence of the marijuana-related offenses); *cf. United States v. Montes-Cardenas*, 746 F2d 771, 776-77 (11th Cir 1984) (holding that drug and weapon offenses may be joined because police discovered evidence of both in the same search, and because there "was a significant link in the government's proof" of both sets of charges); *United States v. Park*, 531 F2d 754, 760-61 (5th Cir 1976) (gun and drug charges could be joined for trial because the offenses occurred simultaneously and evidence of each was discovered in the same search).

In addition to the contextual concurrence of the commission and investigation of the predicate crimes, there was also substantial "overlapping proof." Given the sequence of events described above, the testimony of many of the same witnesses, including W and the officers who conducted the search and investigatory interviews, pertained to both sets of charges. *See* 276 Or App at 379 (describing trial testimony).

In sum, in the totality of the circumstances—and given the principle that we are to "broadly construe" ORS 132.560(1) in favor of permissive joinder in order to promote trial economy and judicial efficiency, *see, e.g., Staley*, 142 Or App at 589—the charges were sufficiently "connected together." Accordingly, the trial court did not err in joining the charges for trial.

We next address defendant's contention that the trial court erred in concluding that he was not substantially prejudiced by the joinder and in denying his motion to sever the harassment and marijuana charges on that basis. As noted above, under ORS 132.560(3) a defendant who is substantially prejudiced by permissive joinder may seek severance of charges to be jointly tried, and a trial court may grant separate trials or other appropriate relief. We recognize, as we have previously, that the possibility of prejudice exists, at least in the abstract, in virtually every situation in which charges are joined for trial. *State v. Luers*, 211 Or App 34, 43-44, 153 P3d 688, *adh'd to as modified on recons*, 213

Or App 389, 160 P3d 1013 (2007). Accordingly, a defendant must identify a "case-specific" circumstance that impairs his or her right to a fair trial in such a way that a danger of substantial prejudice cannot be mitigated in other ways. *Id.*

Here, defendant argues that the evidence from the "two cases" would not have been mutually admissible in separate trials and that joinder "would likely have hindered a jury's ability to base its decision on a dispassionate consideration of the evidence." Those arguments are unavailing. *See Luers*, 211 Or App at 43-44 (when evidence "is sufficiently simple and distinct to mitigate the dangers created by joinder, substantial prejudice has not been established"; "[t]he mere assertion that evidence relating to some charges will influence the jury's consideration of other charges is insufficient" to establish substantial prejudice).

Defendant further argues that the joinder "impacted [his] right to testify in his own defense" because, if he chose to testify, evidence of a prior domestic violence-related conviction would be admissible under OEC 609 with respect to the harassment and assault charges, but would not otherwise be admissible if he were to testify in a separate trial on the marijuana charges. Defendant is mistaken. As the trial court observed, if defendant chose to testify, he was free to limit the scope of his testimony on direct examination so as to avoid opening the door to cross-examination concerning matters he did not want to discuss. *Cf. State v. Gensler*, 266 Or App 1, 9, 337 P3d 890 (2014), *rev den*, 356 Or 690 (2015) (concluding that the defendant failed to establish that the joinder of two sets of sexual abuse offenses involving different victims would substantially prejudice him by limiting his ability to testify in his own defense about one case but not the other, because that potential prejudice could be mitigated "by limiting the state's cross-examination of defendant if he chose to testify in the case pertaining to [one victim] but not the case pertaining to [the other]"). The trial court did not err in denying the motion to sever.

In his second assignment of error, defendant argues that the trial court erred by granting the state's motion *in limine* to preclude him from advancing the choice-of-evils defense to the marijuana possession charge. In reviewing

that matter, we view the facts in the light most favorable to defendant in order to determine whether there was any evidence from which a jury could infer the required elements of that theory. *State v. Miles*, 197 Or App 86, 88, 104 P3d 604, *rev den*, 338 Or 488 (2005).[6]

As stated above, 276 Or App at 378-79, the trial court held a hearing to determine whether the choice-of-evils defense was available to defendant. The defense presented evidence that defendant had been injured in a January 3 car accident (about a month prior to the February 6 arrest), which left him with "severe" sleep-disrupting back pain. Defendant had gone to the emergency room immediately afterward, and, at some point, an MRI was taken. The emergency room doctor initially prescribed Vicodin, which caused defendant to experience unpleasant side effects, including nausea, and perhaps even "made him sicker than he was before." Later, on February 1, defendant saw a physician who prescribed several other pain medications, including Percocet. Defendant experienced a similarly bad reaction to those medications.

The evidence also showed that defendant did not make additional efforts to procure further conventional medical treatment for his back pain, such as physical therapy or visiting an urgent care facility. Defendant was unemployed and had access to transportation, and the insurer of the driver at fault in the car accident was covering his medical expenses. However, aside from occasionally stretching and receiving back rubs from W, he did not pursue further additional conventional treatment options.

Defendant decided to use marijuana instead of the prescribed pain medications, and possessed and consumed marijuana for the purpose of treating his back pain and sleep problems. W began to use pill containers to measure out doses

---

[6] Our standard of review as to whether a defendant was entitled to advance a defense is essentially the same as the standard of review pertinent to whether a defendant was entitled to an instruction on that defense. *See State v. Freih*, 270 Or App 555, 556, 348 P3d 324 (2015) ("We review the trial court's ruling that defendant would not be entitled to an instruction on the statutory choice-of-evils defense for legal error, viewing the record in the light most favorable to defendant to determine whether a jury permissibly could find the statutory elements of the defense from the facts or evidence contained in the record.").

of marijuana for defendant. With W's help, defendant began researching the process for obtaining a medical marijuana card. That research included asking four acquaintances with cards about how to get one, contacting three doctors, making an appointment with one doctor, visiting the state medical marijuana website, and researching what kind of medicinal marijuana he should use for back pain.

Those activities were time consuming, and defendant found it impossible to get a card within the time frame between the accident and the arrest. Only certain providers were willing to be involved in the process, and, even after defendant found a provider, he was informed that three visits would be required before a card could issue. Ultimately, defendant did obtain a card about three months after the arrest.

At the conclusion of the hearing, the trial court determined that defendant was not entitled to present the choice-of-evils defense because his factual theory and proffered evidence did not fulfill the statutory requisites. It explained that defendant had not demonstrated that he had "taken a substantial step" to comply with the Oregon Medical Marijuana Act (OMMA), as required by *former* ORS 475.319(3), and further concluded that, under the precedent set in *Miles*, 197 Or App 86, defendant had failed to meet the generally applicable requisites to a choice-of-evils defense under ORS 161.200.

*Former* ORS 475.319(3) provides:

"No person engaged in the medical use of marijuana who claims that marijuana provides medically necessary benefits and who is charged with a crime pertaining to such use of marijuana shall be precluded from presenting a defense of choice of evils, as set forth in ORS 161.200, or from presenting evidence supporting the necessity of marijuana for treatment of a specific disease or medical condition, provided that * * * the patient has taken a substantial step to comply with [the OMMA]."

ORS 161.200(1), in turn, provides:

"[C]onduct which would otherwise constitute an offense is justifiable and not criminal when:

"(a) That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and

"(b) The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue."

Thus, to advance the choice-of-evils defense in the medical marijuana context, defendant was required to make a *prima facie* showing both (1) that he had taken "a substantial step" to comply with the OMMA and (2) that his circumstances satisfied the generally applicable prerequisites to the choice-of-evils defense set out in ORS 161.200, which the text of ORS 475.319(3) ("as set forth in ORS 161.200") incorporates by reference. As noted, the trial court held that defendant failed in both respects, and defendant now challenges both aspects of that ruling. For the following reasons, we conclude that defendant failed to present evidence from which a jury could find the requisites of ORS 161.200. Accordingly, we need not reach the question of whether defendant's proof was sufficient to make a *prima facie* showing of a "substantial step" to comply with the OMMA.

ORS 161.200 requires a defendant seeking to advance the choice-of-evils defense to present evidence of three cumulative elements: "(1) his conduct was necessary to avoid a threatened injury; (2) the threatened injury was imminent; and (3) it was reasonable for him to believe that the need to avoid that injury was greater than the need to avoid the injury that * * * the statute that he was found to have violated, seeks to prevent." *State v. Boldt*, 116 Or App 480, 483, 841 P2d 1196 (1992).

With respect to the first element, for criminal conduct to be "necessary" to avoid a threatened injury, a defendant must show that "no other course of action [was] available to him but to commit the crime." *State v. Freih*, 270 Or App 555, 559, 348 P3d 324 (2015). Defendant's offer of proof was insufficient to permit a juror to find that he had "no other course of action" available but to unlawfully possess marijuana in order to manage his chronic symptoms. To be sure, defendant proffered evidence suggesting that it would have been logistically impossible for him to obtain a medical marijuana card within a month of the car accident—a

circumstance that materially distinguishes this case from *Miles*, the case relied upon by the trial court and the state.[7] Nevertheless, uncontroverted evidence adduced at the pretrial hearing demonstrated that defendant had other available treatment options during that time, including returning to his physician or visiting an urgent care clinic to obtain alternative medication or other treatment options such as physical therapy. *See State v. Waller*, 22 Or App 299, 302-03, 538 P2d 1274 (1975) (concluding that the choice-of-evils defense was unavailable where "[t]he facts suggest a number of reasonable alternatives rendering defendant's actions unnecessary"); *accord Freih*, 270 Or App at 559-60 (holding that a defendant who failed to appear at a court appearance because he had to travel overseas to care for his ailing mother two weeks prior to the scheduled appearance had reasonable alternative courses of action available to him, and therefore was not entitled to advance the choice-of-evils defense). Even viewing the evidence in the light most favorable to him, defendant—who undisputedly had access to insurance coverage as well as the time and ability to schedule and attend appointments—clearly had other reasonable treatment options available. *See* 276 Or App at 388-89.

Thus, because defendant failed to adduce *prima facie* proof that the only reasonable course of action available to him was self-medicating with marijuana, he was not legally entitled to advance the choice-of-evils defense. Accordingly, the trial court did not err in precluding that defense.

Affirmed.

---

[7] In *Miles*, the defendant sought to assert a choice-of-evils defense to a charge of marijuana manufacture. He presented evidence of several debilitating—and longstanding—medical conditions with symptoms that he treated with marijuana. 197 Or App at 88. On appeal, we affirmed the trial court's decision to bar that defense, reasoning that the defendant "failed to present evidence of an inability to follow the legal course of action," because he had over a year to obtain a medical marijuana card and had established a relationship with a provider willing to prescribe marijuana well before the arrest. *Id.* at 94. By contrast, here, defendant presented sufficient evidence to support a finding that it would have been impossible for him to obtain a card within a month of the accident. At the time of the accident, he did not have an established relationship with a physician willing to facilitate medical marijuana treatment. Furthermore, the providers who may have been willing to do so would have needed his medical records and at least three visits in advance of supporting a card application.