STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RHYAN ARIEL STROUSE,
*Defendant-Appellant.*

Umatilla County Circuit Court
CF110213; A151756

366 P3d 1185

Peter Gartlan, Chief Defender, and Lindsey K. Detweiler, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Matthew J. Preusch, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Flynn, Judge, and Haselton, Senior Judge.*

_____

* Flynn, J., added pursuant to ORS 2.570(2)(b); ORS 2.570(3).

HASELTON, S. J.

**HASELTON, S. J.**

Defendant was convicted of various offenses in connection with a series of events that transpired between December 1 and December 12, 2010. All of those offenses were charged in a single indictment. On appeal, defendant asserts that the trial court committed multiple errors with respect to the joinder of those charges for trial. In particular, defendant argues that the court erred in: (1) denying his demurrer based on his contention that the state failed to satisfy the pleading requirements for joining multiple offenses in a single indictment; and (2) denying his motion to sever one set of charges from the other charges. Defendant further argues—and the state concedes—that the trial court plainly erred in failing to enter a judgment of acquittal on the charge of initiating a false report (Count 10). As amplified below, we conclude that the trial court did not err in denying the demurrer; we further conclude that the court did not err in refusing to sever the two sets of charges, in that they were properly joined in the first instance and defendant failed to demonstrate substantial prejudice. Finally, we agree with the parties that the trial court plainly erred in failing to acquit defendant on Count 10, and we exercise our discretion under *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991), to correct that error. Accordingly, we reverse defendant's conviction on Count 10, but otherwise affirm defendant's convictions, and remand for resentencing, ORS 138.222(5).

We begin by describing the somewhat complicated series of events that precipitated the charges against defendant, as well as the material procedural facts, which are relatively straightforward. On December 1, 2010, a woman, J, came home from work to discover that her Pendleton home had been burglarized. Several items were taken, including a double-barreled 12-gauge shotgun, a Smith & Wesson 9 millimeter handgun, another shotgun, a pistol, and some Xbox games and controllers. J reported the incident to the police. Later, surveillance video showed J's daughter's ex-boyfriend, Dylan Howell, and another man, Chris Moore, carrying the weapons out of the house. Soon after the burglary, defendant

came into possession of the 12-gauge shotgun and the 9 millimeter handgun.[1]

Five days later, on December 6, the Pendleton police executed a warranted search of defendant's house, the basis of which was unrelated to the December 1 burglary. Officers found and seized marijuana and paraphernalia, including numerous bags of marijuana, a small plastic bag of hashish, bongs, and a scale. Officers also seized a black cell phone and a backpack containing Xbox games and controllers. However, no guns were found during the December 6 search. One child and four adults, including defendant, were present when the warrant was executed.

Two details pertaining to the seized cell phone and the items in the backpack are material to our consideration of defendant's anti-joinder and severance challenges. First, the police discovered a number of text messages possibly referencing criminal activity on the cell phone. In particular, a series of messages that defendant had sent on December 3 conveyed that he had recently come into possession of a 12-gauge shotgun and a 9 millimeter handgun:

"Come see the new toys."

"Like I said, my friends Smith & Wesson want to see you."

"And what looks like a ranger."[2]

"12-gauge."

Second, the Xbox games and controllers were later identified as among the items taken in the December 1 burglary.

On December 12, 2010, several days after the search of defendant's house, defendant's associate, Stephen Cullen, learned from Howell and Moore (the perpetrators of the December 1 burglary) that the police were looking for the missing weapons and suspected that defendant had them. Cullen went to defendant's house and related that information to him. At that time, defendant was in possession of the

---

[1] Howell told the police that he had given the two guns to defendant shortly after the burglary.

[2] The state presented evidence that a "ranger" is a shotgun.

12-gauge shotgun and the 9 millimeter handgun, and his associates had the two other firearms from the December 1 burglary in their possession. Defendant, Cullen, and two other associates decided to give all the guns back to Howell and Moore, who would then turn them over to the police.

With Cullen driving, defendant and the two associates went to drop off the four guns. En route, defendant—who had been attempting to clean fingerprints off the handgun and failed to realize that a round was in the chamber—shot himself in the foot. Defendant and the others then decided, rather than returning the guns as planned, they would dispose of them, throwing them into a rural ditch.

Cullen subsequently drove defendant to the hospital, where defendant received treatment for his wound. While defendant was at the hospital, an officer questioned him about how he had been shot. As described more fully below in our consideration of the sufficiency of the evidence of initiating a false report, see 276 Or App at 404, defendant answered that he had been the victim of a drive-by shooting at his residence.

Based on those events, defendant was charged in a single indictment with 10 offenses. Seven of the charges pertained directly to the December 1 burglary and its aftermath. Specifically, defendant was charged with four counts (Counts 4-7) of first-degree theft of a firearm, ORS 164.055, corresponding respectively to a .410 shotgun, the 12-gauge shotgun, the 9 mm handgun, and a .44 magnum pistol. Defendant was also charged with one count of hindering prosecution, ORS 162.325 (Count 2), based on his alleged concealment of the guns after the burglary, as well as one count of tampering with physical evidence, ORS 162.295 (Count 8), and one count of initiating a false report, ORS 162.375 (Count 10), based on the events of December 12. Count 8 related to defendant's involvement in disposing of the weapons, and Count 10 related to his fictitious explanation of his gunshot wound to the officer who came to interview him at the hospital.

The remaining three charges were predicated on the fruits of the December 6 search of defendant's home, and attendant circumstances. Specifically, defendant was

charged with unlawful possession of marijuana, ORS 475.864 (Count 1), first-degree theft of property valued at $1,000 or more (the Xbox equipment), ORS 164.055 (Count 3), and endangering the welfare of a minor, ORS 163.575 (Count 9), based on the concurrent presence of a minor and controlled substances at his residence.

Before trial, defendant raised two distinct procedural challenges. First, he asserted that "improper joinder" was a basis for a demurrer under ORS 135.630, arguing that, because there was no legal basis to join the various charges under ORS 132.560(1)(b)(A) - (C), the indictment should be dismissed. Defendant argued particularly that, under our decision in *State v. Johnson*, 199 Or App 305, 314-18, 111 P3d 784, *rev den*, 339 Or 701 (2005), various charges were neither "connected together" nor "constitute[ed] parts of a common plan or scheme," so as to be amenable to permissive joinder under ORS 132.560(1)(b)(C). *See Johnson*, 199 Or App at 317 (holding that ORS 132.560(1)(b)(C) is satisfied where "the joined counts are logically related, and there is a large area of overlapping proof" between them). Second, defendant concurrently filed a motion to sever, seeking to separate the theft and hindering charges from the marijuana charges for the same reason.[3]

The state remonstrated that joinder was proper under the *Johnson* construct of ORS 132.560(1)(b)(C), because all 10 charges were inextricably linked, both contextually and with respect to the evidence required to prove them. As the prosecutor summarized, in the state's view,

"the factual connection is that this is like a snowball running downhill gathering up steam. You have the search warrant, it leads to the discovery of drugs, it sets in motion these guns, that the defendant had sent text messages before the search warrant was executed, that he had possession of, and all of a sudden they're being disbursed and being given back and gotten rid of."

The trial court denied defendant's motions. It explained that it was denying the demurrer "because it's

---

[3] Defendant's written motion sought to sever Count 10 (initiating a false report) from the nine other charges. However, at the hearing on that motion, defense counsel expanded the scope of that request.

obvious all of these things are factually related. It was not improper to bring them in the same charging document since obviously one led sequentially to the other, and there are links of proof between them." From the court's comments during argument on the motions, it is evident that it considered the fact that the Xbox equipment taken during the December 1 burglary was discovered during the December 6 search of defendant's residence to be an important evidentiary nexus between the marijuana and the theft charges.[4]

In denying the motion to sever, the trial court—which had repeatedly sought clarification from the parties with respect to their positions as to which charges could and should be separately tried—explained: "I think that if we're having so much difficulty figuring out which ones can be tried separately from the others, that's an indication that they probably can't."

Ultimately, the jury found defendant guilty on six counts. Pursuant to the state's motion, Counts 3 (first-degree theft relating to the XBox equipment), Count 4 (first-degree theft of the .410 shotgun), and Count 7 (first-degree theft of the .44 magnum pistol) were dismissed for lack of sufficient evidence. The jury acquitted defendant on Count 1 (marijuana possession), but found him guilty on the remaining counts.[5] At no point during the trial did defendant challenge the sufficiency of the state's proof of initiating a false report (Count 10).

On appeal, defendant assigns error to: (1) the trial court's denial of his demurrer; (2) the trial court's denial of his motion to sever; and (3) the trial court's "plain error" in failing to enter a judgment of acquittal *sua sponte* as to the charge of initiating a false report (Count 10). As explained below, defendant's appellate arguments pertaining to the denial of the demurrer are unreviewable as unpreserved;

---

[4] At one point the court sought (and received) confirmation from counsel that "the link with the unlawful possession of marijuana to * * * the previous thefts was that some of the stolen property was found in a backpack on December 6th in the house." The court also posited that the state could not "convey how you found the property in the backpack, without in some way conveying why you were there, and it's a necessary part of the story?"

[5] The trial court merged the guilty verdicts on Count 5 and Count 6, entering a single conviction for first-degree theft of a firearm.

we reject defendant's severance contentions; and we agree that the entry of a conviction on Count 10 was plain error and exercise our discretion under *Ailes* to remedy that error.

We proceed to the demurrer. On appeal, defendant argues that the indictment was fatally defective because it did not *expressly allege* a basis for permissive joinder and did not otherwise allege "facts showing that the multiple charges [were] properly joined." Specifically, defendant contends—for the first time on appeal—that ORS 132.560(1)[6] requires that charging instruments allege a basis for permissive joinder. That novel, procedurally precise, contention is fundamentally different from the challenge defendant advanced before the trial court. As recounted above, 276 Or App at 397, the gravamen of defendant's argument before the trial court was substantive, *viz.*, that the indictment should be dismissed if the state failed to establish the predicates under ORS 132.560(1) for joining the charges for trial. His present, appellate argument relates to the sufficiency of the allegations of the indictment (as opposed to the substantive correctness of joinder)—that is, that the state was required, and failed, to *allege* the legal basis for joining multiple charges in the indictment. Given that qualitative difference between his trial and appellate arguments, defendant failed to "alert [the] trial court to its [purported] failure" to address the issue now raised on appeal. *Peeples v. Lampert*, 345 Or 209, 222, 191 P3d 637 (2008). Accordingly, the matter is unreviewable as unpreserved.

Defendant's second assignment of error requires us to consider whether the trial court erred in either of two respects in denying the motion to sever. First, defendant asserts that various charges were improperly joined for trial because they failed to meet the statutory requisites for joinder. Second, defendant argues that, in all events, trying the charges together was substantially prejudicial to his defense.

ORS 132.560 frames our consideration. That statute provides, in relevant part:

"(1)  A charging instrument must charge but one offense, and in one form only, except that:

---

[6] Set out below, 276 Or App at 399-400.

"* * * * *

"(b) Two or more offenses may be charged in the same charging instrument in a separate count for each offense if the offenses charged are alleged to have been committed by the same person or persons and are:

"(A) Of the same or similar character;

"(B) Based on the same act or transaction; or

"(C) Based on two or more acts or transactions *connected together or constituting parts of a common scheme or plan.*

"* * * * *

"(3) If it appears, upon motion, that the state or defendant is substantially prejudiced by a joinder of offenses under subsection (1) or (2) of this section, the court may order an election or separate trials of counts or provide whatever other relief justice requires."

(Emphasis added.)

As we explained in *Johnson*, 199 Or App at 314, under ORS 132.560, a challenge concerning permissive joinder of multiple offenses involves several procedural steps. If a defendant challenges the legality of joinder (that is, raises the issue of misjoinder), the court must first determine whether the charges meet any of the independently sufficient bases for joinder listed in ORS 132.560(1)(b)(A) to (C). If so, the charges "may" be consolidated. However, even if joinder is legally permissible, "either party may move the court to sever the offenses on a showing that it is 'substantially prejudiced' by the joinder. The court may then exercise discretion to order separate trials or 'whatever other relief justice requires.'" *Johnson*, 199 Or App at 314 (citations omitted).

We begin with the trial court's predicate ruling that the charges were properly joined for trial, which we review for legal error. *State v. Thompson*, 328 Or 248, 256-57, 971 P2d 879, *cert den*, 527 US 1042 (1999). The trial court did not explicitly identify the statutory basis of its joinder ruling. However, the parties' arguments and the trial court's proffered rationale all hewed to the construct of ORS 132.560(1)(b)(C) that we announced in *Johnson—viz.,*

charges are "connected together or constituting parts of a common scheme or plan" where the joined counts are "logically related," and there is substantial overlapping proof between them. 199 Or App at 317-18. The parties' arguments on appeal both track that understanding.

Defendant challenges the joining of the "marijuana-related" charges with the "firearm-related" charges, but concedes that the hindering prosecution and tampering with evidence charges were properly joined with the firearm charges.[7] According to defendant, "the overlapping proof between the marijuana-related charges and the stolen firearm offenses would have been very slight" and "there were no interlocking facts that would suggest a logical relationship" between the two sets of offenses. Defendant emphasizes that no weapons were discovered in his residence in the December 6 search that led directly to the marijuana-related charges.

In response, the state maintains that all of the predicate events were part of the same "messy picture." In particular, the state notes that, although the police did not find the stolen guns in the December 6 search, that search did yield the Xbox equipment that had been taken along with the guns on December 1. The state also highlights the fact that defendant's phone, seized in the December 6 search, contained text message evidence linking him to the stolen guns. The state further argues that the enhancement facts on the marijuana possession charge, alleging "possession of stolen property" and "possession of a weapon," also overlapped with the proof of the theft charges.

Thus, as framed by the parties, the inquiry reduces to whether the marijuana-related offenses and the firearm theft offenses were "connected together or constitute[ed] parts of a common scheme or plan" as required

---

[7] Given defendant's concession that the hindering prosecution and tampering charges were properly joined with the firearm theft charges, the remainder of the charges, which pertained directly to the fruits of the December 6 search and attendant circumstances—Count 1 (unlawful possession of marijuana); Count 3 (first-degree theft of the Xbox equipment); and Count 9 (endangering the welfare of a minor)—necessarily constitute the "marijuana-related" charges.

for the permissive joinder of charges for trial under ORS 132.560(1)(b)(C). For the reasons that follow, we conclude that they were.

As already noted, *see* 276 Or App at 397, joining charges under ORS 132.560(1)(b)(C) requires a showing by the state that the charges were "logically related" and had substantial overlapping proof. *Johnson*, 199 Or App at 317. The totality of the circumstances here satisfied that standard. First, significant evidence linking the two sets of offenses was discovered in the same search. In addition to the evidence of the various marijuana-related charges, the December 6 search yielded the Xbox equipment and cell phone, both of which support the state's theory that defendant was involved in receiving firearms from the December 1 burglary. *See* 276 Or App at 394-95. That circumstance also supports the state's rationale that defendant's efforts to evade prosecution for the firearm-related charges "snowballed" as a result of the December 6 search, suggesting a logical relationship between the predicate conduct for the various offenses. Additionally, given that evidence of both sets of offenses was discovered in the same search, many of the same witnesses, including defendant's various associates and the law enforcement officials who conducted the search, were needed to testify about both. *See State v. Dewhitt*, 276 Or App 373, 385-86, 368 P3d 27 (2016) (noting that two sets of offenses were "materially linked" for purposes of ORS 132.560(1)(b)(C) in part due to the fact that evidence of both was discovered in the same search by the same officers); *cf. State v. Wittwer*, 214 Or App 459, 463-64, 166 P3d 564 (2007) (joinder of multiple charges that were committed and investigated at different times and places was proper because the later occurring offenses were clearly precipitated by an earlier offense, rendering evidence of the initial offense "necessary to prove * * * and to explain the context and motivation for the [later occurring] events").

Those circumstances demonstrate that the various offenses were sufficiently "connected together or constitute[ed] parts of a common scheme or plan" as required by ORS 132.560(1)(b)(C). The trial court did not err in joining the charges.

Having concluded that the trial court did not err in permitting the joinder of the charges in the first instance, we turn to defendant's contention that the trial court erred in implicitly, but necessarily, determining that he was not substantially prejudiced by the joinder and in denying his motion to sever the charges on that basis under ORS 132.560(3). We review a determination that the facts presented by defendant did not demonstrate the existence of substantial prejudice for errors of law. *State v. Luers*, 211 Or App 34, 43, 153 P3d 688, *adh'd to as modified on recons*, 213 Or App 389, 160 P3d 1013 (2007).

Defendant contends that he was substantially prejudiced by the trial court's failure to sever the two sets of charges because "there is nothing to suggest that evidence from the two incidents would have been mutually admissible in separate trials," and because "the seriousness of the firearm charges would likely have hindered a jury's ability to base its decision on a dispassionate consideration of the evidence." Those unelaborated arguments are unavailing in the context of this case because they fail to identify a "case-specific" circumstance that impaired defendant's right to fair trial in such a way that a danger of substantial prejudice could not be mitigated in other ways, as required by *Luers*, 211 Or App at 43. *See also State v. Crummett*, 274 Or App 618, 621-22, 361 P3d 644 (2015) (rejecting undeveloped, "conclusory allegations" that the joinder of multiple child sex abuse charges involving six different victims was prejudicial for lack of any explanation as to how the defendant was substantially prejudiced based on the specific facts and circumstances in that case). Furthermore, "[t]he mere assertion that evidence relating to some charges will influence the jury's consideration of other charges is insufficient" to establish substantial prejudice. *Luers*, 211 Or App at 43; *see Dewhitt*, 276 Or App at 386-87 (rejecting identical arguments under *Luers*); *State v. Tidwell*, 259 Or App 152, 155, 313 P3d 345 (2013), *rev den*, 355 Or 142 (2014) ("General arguments of prejudice that could be made in any case in which charges are joined are not sufficient to demonstrate substantial prejudice when the defendant fails to relate those arguments to the specific facts of the defendant's case."). Finally, and in all events, defendant fails to explain

why other measures such as limiting instructions would be insufficient to mitigate any putative prejudice. *Cf. Tidwell,* 259 Or App at 155-156 (rejecting the defendant's argument that two DUII charges should have been severed given the "probable effectiveness of limiting instructions to the jury"). The trial court did not err in denying defendant's motion to sever under ORS 132.560(3).[8]

We turn, finally, to the third assignment of error. Defendant argues, and the state agrees, that it was "error apparent on the record," ORAP 5.45(1), to convict him of initiating a false report (Count 10). Specifically, there was *no* evidence that defendant *initiated* the fictitious report to the officer who went to him at the hospital (telling the officer that his gunshot wound was caused by a drive-by shooting, when in fact he had shot himself with the stolen 9 mm handgun).

We agree with the parties that, on this record, the requisites of plain error review, *see State v. Brown,* 310 Or 347, 355, 800 P2d 259 (1990), have been satisfied. *See, e.g., State v. McCrorey,* 216 Or App 301, 306, 172 P3d 271 (2007) (a conviction for initiating a false report, ORS 162.375, undisputedly "must be supported by evidence that the defendant *initiated* the falsification, rather than mere evidence that a defendant initiated a process that later resulted in that person giving false information about a true incident to police" (emphasis in original)). *See generally, State v. Reynolds,* 250 Or App 516, 280 P3d 1046, *rev den,* 352 Or 666 (2012) (describing and applying "plain error" methodology in analogous circumstance).

We further determine, consistently with *Reynolds,* that these circumstances warrant the exercise of our *Ailes* discretion. As we observed in *Reynolds,* the entry of a criminal conviction without sufficient proof is a grave error and of constitutional magnitude, and defendant "has a strong interest in having a criminal record that accurately reflects the nature and extent of [his] conduct." *Id.* at 522. Indeed, here, the state acknowledges that it has no interest in upholding

---

[8] Defendant also contends that joining Count 10 with the other counts violated his constitutional due process rights. That argument, raised for the first time on appeal, is unreviewable as unpreserved.

the erroneous conviction. Further, there is no plausible prospect that a timely motion for judgment of acquittal could have altered the state of the evidentiary record—that is, the record in this regard was fully developed—and defendant gained no strategic advantage from failing to act. *See State v. Lusk*, 267 Or App 208, 215, 340 P3d 670 (2014) (observing that preservation policies are not undermined in exercising discretion to reverse a conviction supported by insufficient proof where the record was fully developed). Accordingly, we reverse the conviction on Count 10.

Conviction on Count 10 reversed; remanded for resentencing; otherwise affirmed.