Argued and submitted December 23, 2004, reversed and remanded for new trial
April 27, 2005

## STATE OF OREGON,
*Respondent,*

*v.*

## STEVEN LAWRENCE JOHNSON,
*Appellant.*

## 00C-48195; A114694

111 P3d 784

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. On the opening brief were David E. Groom, Acting Director, and Steven V. Humber, Deputy Public Defender. With her on the reply brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services. Steven Lawrence Johnson filed the supplemental brief *pro se*.

Steven Powers, Assistant Attorney General, argued the cause for respondent. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Defendant was convicted of felony murder, ORS 163.115(1)(b); manufacture of a controlled substance, ORS 475.992; and felon in possession of a firearm, ORS 166.270. After the trial court allowed a police officer to recount the incriminating confession of a nontestifying codefendant, defendant moved for a mistrial. The court denied the motion. On appeal, we hold that the denial was error. We also conclude that the controlled substance charge and the felony murder charge were not "connected together or constituting parts of a common scheme or plan" for the purposes of joinder under ORS 132.560(1)(b)(C). We reverse and remand.

The case arises from the robbery and shooting death of Sergio Enriquez, who was found dead in his apartment with a head wound and a fatal gunshot wound. Two of Enriquez's acquaintances, defendant and Jason McLavey, were charged with the murder. McLavey discussed the encounter with several people and eventually confessed to the police. According to his rendition of events, he and defendant went to Enriquez's apartment to rob him of methamphetamine and money. During the course of the robbery, defendant struck Enriquez on the head with a gun. McLavey fled and, as he did so, he heard a shot, presumably the fatal one from defendant's gun.

Defendant and McLavey were tried jointly on two counts each of felony murder. At the same trial, defendant was tried on a charge of felon in possession of a firearm and on a drug manufacturing charge, the latter based on a marijuana growing operation that police found in his apartment three weeks after the murder. Before trial, defendant moved to sever the drug manufacturing charge from the remaining charges, arguing that joinder was improper under ORS 132.560. Defendant also moved to sever his trial from McLavey's, arguing that introduction of McLavey's confession implicating defendant would violate his confrontation rights under *Bruton v. United States*, 391 US 123, 136-37, 88 S Ct 1620, 20 L Ed 2d 476 (1968), and *Richardson v. Marsh*, 481 US 200, 211, 107 S Ct 1702, 95 L Ed 2d 176 (1987), because McLavey would be a nontestifying codefendant and

his statement could not be redacted so as to purge all references to defendant.

The court denied the motions. The confession subsequently came in through the testimony of the officer to whom it was made. Instead of referring to defendant by name, the officer referred to him in terms such as "the acquaintance" or "the other person." As an additional precaution, the court instructed the jury to consider the confession as evidence against McLavey only. The court also admitted hearsay statements that McLavey had made to others concerning the events of the night of the robbery. Other circumstantial evidence included testimony that defendant owned the type of gun that was used to kill Enriquez and that a person dressed as defendant was seen leaving the scene. McLavey was convicted of felony murder and defendant was convicted on all charges.

On appeal, defendant assigns error to the trial court's denial of several motions: a motion to sever defendant's trial from McLavey's; a motion for a mistrial based on the admission of McLavey's redacted confession; a motion to sever the manufacturing charge from the other offenses in the charging instrument; a motion for a mistrial based on an officer's testimony concerning defendant's post-arrest silence; a motion to suppress evidence obtained from the search of McLavey's apartment; and a motion for a judgment of acquittal on the felony murder counts on the basis that the statements of codefendant McLavey were not sufficiently corroborated under ORS 136.440. Defendant also assigns error to decisions concerning his sentencing. We conclude that the court properly denied defendant's motion to sever his trial from McLavey's but erred in denying defendant's motion for a mistrial based on the content of McLavey's hearsay confession. The latter conclusion obviates the need to discuss the remaining assignments of error, but we discuss the issue involving severance of the controlled substance charge because it is likely to recur in any new trial.

We begin with defendant's motion to sever his trial from McLavey's. That motion was based on the argument that the introduction of testimony describing and reciting

McLavey's confession, even with all of its references to defendant redacted, would violate defendant's rights under the Sixth Amendment to the United States Constitution and Article I, section 11, of the Oregon Constitution.[1] The argument stems from a line of United States Supreme Court cases beginning with *Bruton*, 391 US at 136-37, where the Court held that admitting the confession of a nontestifying codefendant in a joint trial deprived the other codefendant of his right to cross-examine as guaranteed by the Confrontation Clause of the Sixth Amendment, regardless of any jury instruction cautioning that the confession applied only to the nontestifying codefendant. Subsequent cases elaborated on the holding in *Bruton*, establishing that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when * * * the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence," *Richardson*, 481 US at 211, but that, to suffice, the redaction cannot simply replace the name of the defendant with a blank space, the word "delete," or some other indication pointing more or less obviously to the defendant, *Gray v. Maryland*, 523 US 185, 194-98, 118 S Ct 1151, 140 L Ed 2d 294 (1998).

Defendant contends that, because McLavey's confession referred to him repeatedly, a proper redaction was impossible, so admitting even a redacted version would inevitably have violated his confrontation rights. Therefore, according to defendant, the court erred in denying his motion to sever. The state responds that the court's denial of defendant's pretrial motion to sever has to be evaluated in light of what the trial court knew at the time it ruled; that, as of that time, the trial court's denial reflected only the conclusion that

---

[1] This court and the Supreme Court have treated Article I, section 11, and the Sixth Amendment as coextensive with respect to an accused's right to confront witnesses. *State v. Campbell*, 299 Or 633, 648, 705 P2d 694 (1985); *State v. Farber*, 295 Or 199, 207 n 10, 666 P2d 821, *appeal dismissed*, 464 US 987, 104 S Ct 475, 78 L Ed 2d 675 (1983); *State v. Jackson*, 187 Or App 679, 682, 69 P3d 722 (2003). We see no reason to avoid concluding that, with respect to the admissibility of nontestifying codefendants' confessions, the guarantee in Article I, section 11, offers at least as much protection as the guarantee in the Sixth Amendment. Thus, our discussion of United States Supreme Court cases in this opinion informs our analysis under Article I, section 11.

the confession *could be introduced* with prejudicial references to defendant redacted; and that this conclusion was correct. Moreover, the state argues that, even if we were to evaluate the trial court's denial of the motion to sever in light of the confession as it ultimately was admitted, it conformed to the redaction standards set forth in *Richardson* and *State v. Umphrey*, 100 Or App 433, 786 P2d 1279, *rev den*, 309 Or 698 (1990).

■     We agree with the state's principal argument. Under ORS 136.060(1), "[j]ointly charged defendants shall be tried jointly unless the court concludes before trial that it is clearly inappropriate to do so[.]" Thus, in reviewing the denial of a motion to sever, we must determine "whether that denial was 'clearly inappropriate,' keeping in mind that the statute favors joint trials." *State v. Lyons*, 161 Or App 355, 358, 985 P2d 204 (1999) (citations omitted). More importantly for purposes of this case, we consider the court's decision "in light of the arguments asserted and circumstances pertaining at the time the pretrial motion was made." *State v. Turner*, 153 Or App 66, 74, 956 P2d 215, *rev den*, 327 Or 317 (1998). Under that standard, we cannot hold that joinder was "clearly inappropriate." The court indicated that it would permit a redacted version of McLavey's confession and issue a limiting instruction in order to guard defendant's constitutional rights, and, in advance of the trial, it had no reason to believe that those measures would not suffice.

■     Defendant also contends that, even if the trial court did not err in concluding *before trial* that the confession was hypothetically susceptible to redaction, the court subsequently erred *during the trial* by admitting the confession as it *actually was* redacted, that is, with the substitution of terms such as "an acquaintance" or "other person" for defendant's name. According to defendant, that procedure was no different from replacing defendant's name with a blank space or symbol as prohibited by *Gray*. The state responds that defendant did not object to the redacted confession when it was admitted, and, for that reason, his claim of error was not preserved for appeal and we cannot consider it. *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000).

The claim of error was preserved. Before the officer recounted the redacted version of McLavey's confession, the court asked defendant's counsel if he approved of the limiting instruction the court planned to give the jury to the effect that the confession could be used against McLavey but not defendant. Defendant's counsel replied, "I am okay with the instruction. You know my feelings about trying to cure the subject. I don't know any instruction will do that * * *." A few moments later, the officer related the redacted confession. Shortly after the confession was presented to the jury, defense counsel moved for a mistrial as follows:

> "Your honor, I would move the Court for a mistrial at this point on behalf of defendant Johnson. We had discussed the possibility of this kind of problem coming up in a joint trial. There obviously had been pretrial rulings."

We conclude that, by moving before trial to sever his trial from McLavey's on the ground that McLavey's hearsay statements would be an incriminating confession of a nontestifying codefendant, defendant put the court and opposing counsel on notice of his argument: *no* redacted confession could protect defendant's rights. He renewed that argument immediately before the redacted confession was presented. That argument rendered unnecessary another objection to the *particular* redacted confession. When, shortly after the redacted confession was admitted, counsel renewed his objection yet again and moved for a mistrial, he adequately preserved his claim of error.

■     We therefore address the merits of the trial court's decision to deny defendant's motion for a mistrial. Our review of such decisions "is limited to determining whether the court abused its discretion." *State v. Voits*, 186 Or App 643, 662, 64 P3d 1156, *rev den*, 336 Or 17 (2003), *cert den*, 541 US 908, 124 S Ct 1612, 158 L Ed 2d 253 (2004). Although it is true that the trial judge "is in the best position to assess the impact of the complained-of incident and to select the means (if any) necessary to correct any problem resulting from it," *State v. Wright*, 323 Or 8, 12, 913 P2d 321 (1996), it is also true that a trial court abuses its discretion when it selects a means that is not within the range of legally acceptable

options. *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000). That is what occurred here.

■ In *Bruton*, the Supreme Court held that one codefendant's confession that directly inculpated another codefendant was so "powerfully incriminating" that its harm could not be overcome by an instruction cautioning the jury to regard the confession as evidence against the confessor only and not the other defendant. 391 US at 135. *Richardson* established that *Bruton* would not apply to a confession that did not directly incriminate the codefendant on its face, *accord Umphrey*, 100 Or App at 438-39, or that had redacted the defendant's name and "any reference to his or her existence." *Richardson*, 481 US at 211. *Gray*, however, explained that a redaction that merely substituted "a blank or the word 'delete' (or, for that matter, a first name or a nickname)" or "similarly obvious indications of alteration" did not suffice. 523 US at 192, 194. The Court explained:

> "A juror somewhat familiar with criminal law would know immediately that the blank * * * refers to defendant Jones. A juror who does not know the law and who therefore wonders to whom the blank might refer need only lift his eyes to Jones, sitting at counsel table, to find what will seem the obvious answer, at least if the juror hears the judge's instruction not to consider the confession as evidence against Jones, for that instruction will provide an obvious reason for the blank. * * *
>
> "For another thing, the obvious deletion may well call the jurors' attention specially to the removed name. By encouraging the jury to speculate about the reference, the redaction may overemphasize the importance of the confession's accusation—once the jurors work out the reference."

*Id.* at 193. Thus, "considered as a class, redactions that replace a proper name with an obvious blank, the word 'delete,' a symbol, or similarly notify the jury that a name has been deleted are similar enough to *Bruton*'s unredacted confessions as to warrant the same legal results." *Id.* at 195.

In the present case, the redacted version of McLavey's confession did not "eliminate * * * any reference to [defendant's] existence," as required under *Richardson*. 481 US at 211. Indeed, it directly and frequently implicated

defendant in the crime of felony murder. The jurors heard, among other things, that McLavey drove to the victim's apartment with "the other person," that McLavey entered the apartment first and that while he was there "the other individual" came in and that "the individual then told [the victim] to get down and struck [the victim] across the left side of his face with the gun that was being held by that person." They heard that, after this violence occurred, McLavey fled, leaving behind only the victim and defendant, and that McLavey then "heard a shot." Further, although they never heard defendant's name, they heard a variety of other "obvious indications of alteration." *Gray*, 523 US at 192. In some contexts, terms such as "the person" or "the individual" would not necessarily alert the jurors to the fact of an alteration, but, as the terms were recited here, no other conclusion was possible. For example, a typical paragraph of the confession, as related by the officer, reads:

> "McLavey stated the *two of them* left the apartment of Buckout and Turner. He indicated *the other person* was driving. And [in] McLavey's initial recorded statement, he said he saw *the other person* in possession of a Glock 9 millimeter handgun on numerous occasions. After leaving the Willamette Landing Apartments, he stated *they* drove around. As McLavey had been up for quite awhile and he was tired, he wanted to score some methamphetamine. McLavey stated this led him to direct *the other person* to drive to [the victim's] apartment."

(Emphasis added.) Every individual in the confession is named with one conspicuous exception, and the fact of that individual's anonymity is reemphasized with every use of some antecedentless pronoun or generic term.[2] Thus, the case falls within the *Bruton* rule; the trial court's decision that the redactions, in combination with a precautionary jury instruction, sufficed to rectify any constitutional infirmity, was legal error. Denying defendant's motion for a mistrial

---

[2] The state cites a number of cases in which courts admitted a nontestifying codefendant's confessions using such words as "we," "they," "others," or "another person," instead of the defendants' proper name. All of the cases, however, occurred after *Richardson*, where the Court expressly left open the question whether substitution of a symbol or neutral pronoun for the defendant's proper name would suffice to eliminate the Confrontation Clause problem, *Richardson*, 481 US at 211, but before *Gray*, in which the Court unequivocally held that it would not.

was therefore beyond the court's discretion and was legal error.

■    We turn to defendant's arguments concerning joinder of the controlled substance and murder charges. ORS 132.560 governs joinder of offenses within a single charging instrument:

"(1)    A charging instrument must charge but one offense, and in one form only, except that:

"(a)    Where the offense may be committed by the use of different means, the charging instrument may allege the means in the alternative.

"(b)    Two or more offenses may be charged in the same charging instrument in a separate count for each offense if the offenses charged are alleged to have been committed by the same person or persons and are:

"(A)    Of the same or similar character;

"(B)    Based on the same act or transaction; or

"(C)    Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

"(2)    If two or more charging instruments are found in circumstances described in subsection (1)(b) of this section, the court may order them to be consolidated.

"(3)    If it appears, upon motion, that the state or defendant is substantially prejudiced by a joinder of offenses under subsection (1) or (2) of this section, the court may order an election or separate trials of counts or provide whatever other relief justice requires."

Thus, joinder involves several procedural steps. First, the court must determine whether the offenses to be joined meet any of the three requirements listed in ORS 132.560(1)(b)(A) to (C). If so, the charges may be consolidated in the same charging instrument. ORS 132.560(2). Then, either party may move the court to sever the offenses on a showing that it is "substantially prejudiced" by the joinder. *Id*. The court may then exercise its discretion to order separate trials or "whatever other relief justice requires." *Id*.

Defendant's indictment alleged that the drug manufacturing offense occurred "[i]n an act connected with, or constituting part of a scheme or plan common to" the counts of felony murder and felon in possession of a firearm, thus justifying joinder under ORS 132.560(1)(b)(C). Defendant moved that the trial court sever the manufacturing charge, arguing that it was not "connected together or constituting part of a scheme or plan common to" the other offenses. Defendant also argued that he was "substantially prejudiced" by the joinder.

The trial court did not explicitly find that the drug manufacturing charge was "[b]ased on two or more acts or transactions connected together or constituting parts of a common scheme or plan" under ORS 132.560(1)(b)(C). Rather, the court's findings concerned the issue of prejudice:

"Regarding the motion to sever the charge related to the manufacture of marijuana found at the execution of the search warrant from the trial of the murder, the court denies defendant's motion. The motive for the murder of the alleged victim in this case concerns the sale and delivery of controlled substances. The state would be allowed to present evidence of the defendant's involvement in the sale and manufacture of controlled substances to support their theory on the motive for murder. Hence, there is little if any prejudice to the defendant to allow a trial concerning both allegations."

Before making the decision concerning prejudice, the court necessarily but implicitly rejected defendant's argument that the manufacturing charge was not based on acts or transactions "connected together" or "constituting parts of a common scheme or plan," a legal determination subject to review for error of law. *State v. Thompson*, 328 Or 248, 256, 971 P2d 879, *cert den*, 527 US 1042, *cert den*, 527 US 1042 (1999). In doing so, the court erred.

Our inquiry focuses on the level of generality that the legislature intended with the phrases "connected together" and "common scheme or plan" in ORS 132.560(1)(b)(C): How direct must the "connect[ion]" be, and what level of generality can allow two offenses to be encompassed within the same "common scheme or plan"? The state

suggests a level of generality that is best appreciated from high altitudes: it argues that the offense of marijuana manufacturing is based on "acts or transactions" "connected together" or part of a "common scheme" to rob and kill the victim simply because defendant's marijuana-growing activity placed him in the drug trade, which "connect[s]" him with the methamphetamine-related robbery of the victim or, alternatively, is part of a scheme common to that robbery. Defendant argues that there are simply no acts or transactions underlying both the marijuana production and the other offenses that are "connected together" or "parts of a common scheme"; the marijuana growing operation was discovered three weeks after the robbery, and, other than the fact that controlled substances were involved in both, the offenses are factually alien to each other.

To accept the state's position would stretch the meaning of the phrases "connected together" or "common scheme or plan" to a level of generality that equates the expansive standard for relevance in OEC 401, *see, e.g., Trook v. Sagert*, 171 Or 680, 688, 690, 138 P2d 900 (1943) (evidence is relevant when it "will advance the search for truth" or "throws some light on the issue"), with the connectedness between offenses required in ORS 132.560(1)(b)(C), rendering almost useless the tests in subparagraphs (1)(b)(A) and (1)(b)(B).

The legislative history of ORS 132.560 supports defendant's position. The statute was amended by House Bill (HB) 2251 to add paragraph (1)(b) in 1989. Or Laws 1989, ch 842, § 1. The text of that subsection was taken directly from the then-existing version of Federal Rule of Criminal Procedure (FRCP) 8(a). The legislative record indicates that the House and Senate Judiciary committees that considered the bill and approved the language in ORS 132.560(1)(b) were keenly aware that the rule would bring Oregon joinder law into conformance with the federal rules. In a House Judiciary Committee hearing, Representative Mannix, moving to pass the bill to the floor, stated, "[W]e are relying on interpretations to date [of FRCP 8(a)], which we are saying we are paralleling here." Tape Recording, House Committee on Judiciary, HB 2251, Jan 20, 1989, Tape 3, Side A (statement of Rep Kevin Mannix). The chair, Representative

Mason, emphasized the amendment's federal model "as a part of the record." Tape Recording, House Committee on Judiciary, HB 2251, Jan 20, 1989, Tape 3, Side A (statement of Rep Tom Mason). The Senate Judiciary Committee, too, was apprised of the federal model in testimony and, before passing the bill to the floor for a vote, it explicitly decided against any further amendment, noting the federal case law interpreting FRCP 8(a) that could serve as a resource in construing the new statute. Tape Recording, Senate Committee on Judiciary, HB 2251, June 14, 1989, Tape 242, Side B (statement of Sen Jim Hill).

Although the record does not reveal discussions or testimony concerning the meaning of the particular requirement of ORS 132.560(1)(b)(C), it is clear that those who deliberated on the bill explicitly acknowledged the usefulness of the federal case law interpreting the rule. Before each committee was testimony delineating the interpretation of FRCP 8(a) in the Ninth Circuit, which included citation to *United States v. Anderson*, 642 F2d 281 (9th Cir 1981). Testimony, House Committee on Judiciary, HB 2251, Jan 13, 1989, Ex I (statement of Dale Penn). We therefore take *Anderson* to illumine the legislative intent of ORS 132.560(1)(b). *See also State v. Meyer*, 109 Or App 598, 602-05, 820 P2d 861, *rev den*, 312 Or 677 (1991) (federal cases interpreting language of federal rule permitting joinder of offenses are persuasive for purpose of analyzing analogous language under state law).

Our interpretation of ORS 132.560(1)(b)(C) is consistent with that case. In *Anderson*, the court interpreted the three tests encompassed in FRCP 8(a) (and later added to ORS 132.560(1)(b)(A) to (C)) and held that "[w]hen the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate." 642 F2d at 284. The court held that narcotics conspiracy and tax evasion counts were properly joined because the narcotics revenue was precisely the income that the defendant failed to report on his taxes; the charges shared a "logical" relationship and there was significant overlapping evidence. *Id.* Conversely, in the present case, the "overlapping evidence" is very slight and, aside from the attenuated relationship between defendant's drug manufacturing and the state's theory concerning his motive to rob Enriquez, there were no interlocking facts that

would suggest a logical relationship between the two offenses. For example, there is no evidence that defendant's marijuana growing operation was part of the same illicit business enterprise as Enriquez's methamphetamine dealings, that is, that Enriquez marketed defendant's product. In sum, there are no acts or transactions underlying both the marijuana production and the rest of the offenses that are "connected together" or "parts of a common scheme" so as to justify joinder of the drug manufacturing charge under ORS 132.560(1)(b)(C). Nor are the two charges "[o]f the same or similar character," ORS 132.560(1)(b)(A), or "[b]ased on the same act or transaction," ORS 132.560(1)(b)(B). Allowing joinder under these circumstances was error.

Reversed and remanded for new trial.