JAMES, J.
*95 *266 In this criminal appeal, the state charged defendant with 11 counts spanning separate dates between November 22, 2014 and January 19, 2015. In relation to an alleged incident of domestic violence that occurred on November 22, 2014, the state charged defendant with three counts of assault in the second degree, ORS 163.175 (Counts 1-3); and two counts of unlawful use of a weapon, ORS 166.220(1)(a) (Counts 4-5). In relation to a separate alleged instance of domestic violence on January 18, 2015, the state charged defendant with robbery in the third degree, ORS 164.395 (Count 6); assault in the fourth degree, ORS 163.160 (Count 7); interference with making a report, ORS 165.572 (Count 8); and theft in the third degree, ORS 164.043 (Count 9). In another alleged incident, one not involving allegations of domestic violence, that occurred on January 19, 2015, the state charged defendant with unlawful possession of methamphetamine, ORS 475.894 (Count 10). Finally, for conduct that was alleged to have occurred between November 22, 2014 and January 19, 2015, defendant was charged with tampering with a witness, ORS 162.285 (Count 11). The jury ultimately convicted defendant on Counts 6, 8, 9, and 10.[1]
Defendant appeals from his conviction of robbery in the third degree (Count 6), ORS 164.395 ; interfering with making a report (Count 8), ORS 165.572 ; theft in the third degree (Count 9), ORS 164.043 ; and possession of methamphetamine (Count 10), ORS 475.894. Defendant assigns error to the court's denial of his demurrer and motion to sever. In particular, he argues that Count 10, possession of methamphetamine, should not have been joined with Counts 6, 8, and 9, because the joinder of Count 10 does not meet the requirements described in ORS 132.560(1)(b)(C), which provides:
"(1) A charging instrument must charge but one offense, and in one form only, except that:
" * * * * *
*267 "(b) Two or more offenses may be charged in the same charging instrument in a separate count for each offense if the offenses charged are alleged to have been committed by the same person or persons and are:
" * * * * *
"(C) Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan."
The state argues that joinder was proper because the crimes arose out of "transactions [that were] connected together." We agree with defendant and, accordingly, reverse.
The relevant facts are undisputed. Defendant and the victim were in a contentious romantic relationship. They met when they were both in a halfway house, following treatment for different substance abuse issues. On November 22, 2014, defendant and the victim had a physical altercation in which the victim sustained a facial laceration and injury to her eye and the police were called. The responding officer, Officer Condon, subsequently tried to contact defendant, but defendant declined to meet with the officer in person and an arrest warrant issued.
The second incident occurred on January 18, 2015. At that time, defendant arrived at the victim's apartment agitated. The victim wanted defendant to leave and, when he would not, she told defendant that she was calling the police. Defendant "wrestled" the phone from her hand, and she sustained a bruise on her leg. Once at work, the victim placed a call to police. The responding police officers were Officers Garrick and Crow. She told Garrick that defendant had forced his way into her apartment.[2] She also informed the officers that defendant had a storage unit nearby. The victim later testified that she *96 believed defendant was under the influence of methamphetamine at the time of this incident.
The third and final incident occurred on the following day, January 19, 2015. At that time, Garrick asked *268 the storage unit facility manager to have defendant come to the facility, which defendant did. Officers Crow, Petra, and Gerba were also present at the facility when defendant arrived. Defendant was arrested upon arrival. The basis for defendant's arrest was the investigation that started on January 18 and the outstanding warrant from the November 22 incident. During defendant's arrest, Gerba discovered a methamphetamine pipe on defendant, which was noted in Crow's report.
On March 11, 2015, defendant filed a demurrer regarding the joinder of the counts and included an alternative motion to sever. However, that motion was not heard until the morning of trial. At that time, the trial court denied the demurrer and motion to sever, finding that the November and January events were "of the same or similar character in that they involve the defendant who was alleged to have committed domestic violence events against the same victim." The court explained that the possession of methamphetamine charge was properly joined because substance abuse would be part of the trial due to the fact that defendant and the victim met in a halfway house and the victim intended to opine that defendant was under the influence of methamphetamine during the January 18 incident. The court said, "[D]rug use will-will influence and affect [defendant's testimony] to a point. And there's almost no way that the Court can segregate out those two [domestic violence] allegations from the pending allegation of the possession charge * * * in a way that will be meaningful for the jury." At trial, the investigating officers who testified were Condon, Garrick, and Gerba.
Defendant assigns error to the denial of his motion to sever. "[W]e review a trial court's determination that the state met the statutory requirements for joinder of charges for legal error. We also review a trial court's determination whether the facts stated in a defendant's motion to sever show the existence of prejudice for legal error." State v. Thompson , 328 Or. 248, 257, 971 P.2d 879 (1999), cert. den. , 527 U.S. 1042, 119 S.Ct. 2407, 144 L.Ed.2d 805 (1999).
On appeal, both parties focus their arguments on ORS 132.560(1)(b)(C). Defendant argues that joinder was *269 improper because the methamphetamine charge against him was not of the same or similar character as the other charges, was not based on the same act or transaction as the other charges, and was not one of two or more acts or transactions connected together or constituting parts of a common scheme or plan. The state does not argue that the methamphetamine charge was of the same character, nor based on the same act, but solely argues that the offenses were based on transactions that were "connected together." In the alternative, the state argues that, if the domestic violence charges and possession charges were improperly joined, the improper joinder was harmless.
We have previously addressed the legislative intent of ORS 132.560(1)(b)(C) ; specifically, what the phrases "connected together" and "common scheme" mean. State v. Johnson , 199 Or. App. 305, 315-17, 111 P.3d 784 (2005). In Johnson , the defendant was charged with felony murder in relation to the robbery and shooting death of a man. Id. at 307, 111 P.3d 784. Three weeks later, a marijuana growing operation was found in the defendant's apartment. Id. The defendant moved to sever the drug manufacturing charge from the remaining charges and argued that joinder was improper under ORS 132.560. Id. There, we rejected the argument that the "defendant's marijuana-growing activity placed him in the drug trade, which 'connect[s]' him with the methamphetamine-related robbery of the victim or, * * * is part of a scheme common to that robbery." Id. at 316, 111 P.3d 784. We held that "[t]o accept the state's position would stretch the meaning of the phrases 'connected together' or 'common scheme or plan' to a level of generality that equates the expansive standard for relevance * * * with the connectedness between offenses required in ORS 132.560(1)(b)(C), rendering almost useless *97 the tests in subparagraphs (1)(b)(A) and (1)(b)(B)." Id.
In Johnson , we also explained that United States v. Anderson , 642 F.2d 281 (9th Cir. 1981), illuminated the legislative intent of ORS 132.560(1)(b). Johnson , 199 Or. App. at 317, 111 P.3d 784 ; see also State v. Meyer , 109 Or. App. 598, 602-04, 820 P.2d 861 (1991), rev. den. , 312 Or. 677, 826 P.2d 636 (1992) (federal cases that interpret the language of the federal rule that permits joinder of offenses are persuasive for purposes of analyzing *270 analogous language under Oregon law). "In Anderson , the court interpreted the three tests encompassed in FRCP 8(a) (and later added to ORS 132.560(1)(b)(A) to (C) ) and held that '[w]hen the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate.' " Johnson , 199 Or. App. at 317, 111 P.3d 784 (quoting Anderson , 642 F.2d at 284 ). In cases where crimes were "committed and investigated at different times and places[, the court examines whether] the later occurring offenses were clearly precipitated by an earlier offense, [thus] rendering evidence of the initial offense 'necessary to prove * * * and to explain the context and motivation for the [later occurring] events.' " State v. Strouse , 276 Or. App. 392, 402, 366 P.3d 1185, rev. den. , 360 Or. 236, 381 P.3d 830 (2016) (quoting State v. Wittwer , 214 Or. App. 459, 463, 166 P.3d 564 (2007) (third brackets in Wittwer ) ).
Applying those principles to this case, the methamphetamine charge was insufficiently connected to the other charges to justify joinder. Defendant was wanted for one incident nearly two months prior; as well as in relation to one incident the day prior to his arrest. When defendant was arrested, he was at a different, unrelated location and was not being investigated for methamphetamine crimes. Almost 24 hours had passed between his last altercation with the victim, during which time he had had no further contact with her.
Defendant's presence at the storage facility and possession of methamphetamine was not the result of a perpetuation of criminal activity related to the incident with the victim and, therefore, not temporally connected. See Strouse , 276 Or. App. at 402, 366 P.3d 1185 (holding that, where subsequent crimes were clearly precipitated by the earlier criminal activity and those prior activities were necessary to explain context and motivation for subsequent crimes, there existed logical relationship and "substantial overlapping proof"). Additionally, there is no area of overlapping proof between the methamphetamine charge and the other charges. To prove the assault, robbery, and tampering with a witness charges, the state did not need to present evidence that defendant later possessed methamphetamine. Conversely, to prove that defendant possessed methamphetamine, the *271 state did not need to present evidence of the domestic violence charges. The testimony about the discovery of the methamphetamine came from an officer who conducted the search, Gerba, and not from Garrick, who had investigated the previous day's altercation, nor from Condon, who investigated the November 22 incident. See State v. Dewhitt , 276 Or. App. 373, 385, 368 P.3d 27, rev. den. , 359 Or. 667, 379 P.3d 526 (2016) (holding that joinder was appropriate where there was "the combination of the temporal and spatial concurrence of the offenses, the circumstances of their investigation, and the very substantial overlap of material witnesses").
In this case, there exists no "temporal [nor] spatial concurrence of the offenses, the circumstances of their investigation," and no "substantial overlap of material witnesses." Id. There are no acts or transactions underlying both the domestic violence charges and the methamphetamine charge that are "connected together" or "parts of a common scheme" to justify the joinder of the possession charge under ORS 132.560(1)(b)(C). Johnson , 199 Or. App. at 318, 111 P.3d 784. The joined charges are also not "of the same or similar character, ORS 132.560(1)(b)(A), or based on the same act or transaction, ORS 132.560(1)(b)(B)." Id. (internal quotation marks and brackets omitted). For the purposes of ORS 132.560, joinder in this case was improper.
Finally, in considering the motion to sever, the trial court anticipated that the victim would testify that defendant appeared to be under the influence of methamphetamine *98 during the January 18 incident. But that fact, standing alone, does not sufficiently tie the incidents together. There was no indication that methamphetamine was a motivating factor for that incident, nor was there an expectation that the victim would testify that defendant was under the influence during the November 22 incident.
Because we determine that joinder is improper in this instance, we examine whether the improper joinder of charges affected the verdict, thus causing substantial prejudice to defendant. State v. Poston , 277 Or. App. 137, 145, 370 P.3d 904 (2016), adh'd to on recons. , 285 Or. App. 750, 399 P.3d 488, rev. den. , 361 Or. 886, 403 P.3d 761 (2017). As we stated in Poston and reaffirmed on reconsideration in that case, "whether *272 improper joinder of charges affected the verdict depends on whether joinder led to the admission of evidence that would not have been admissible but for the [erroneous] joinder * * * and, if so, whether that evidence affected the verdict on those charges." 277 Or. App. at 145, 370 P.3d 904 (footnote omitted); see also 285 Or. App. at 754-55, 399 P.3d 488 ("Because the charges were not lawfully joined in the indictment, defendant was prejudiced in the manner that we identified, that is, by proceeding to trial on charges of promoting prostitution and identity theft that were not lawfully joined for trial."). Therefore, as we have noted, "to conclude that the erroneous joinder was harmless-that it had little likelihood of affecting the verdict on a charge or properly joined group of charges[,]" we must be able to determine that evidence that could have affected the verdict that was "admitted at trial to prove other, improperly joined, charges would have been admissible in a hypothetical trial on the charge or group of charges alone." State v. Clardy , 286 Or. App. 745, 771, 401 P.3d 1188, adh'd to as modified on recons. , 288 Or. App. 163, 406 P.3d 219 (2017) (internal quotation marks omitted).
Here, our review of the record does not show that all of the evidence admitted in the improperly joined counts would have been admissible in stand-alone trials. It is highly unlikely that evidence of assault and domestic violence would have been admissible in a trial for possession of methamphetamine, nor would the evidence of possession the day after have been relevant. As we noted in Clardy ,
"[i]t is possible that the promoting-prostitution evidence-evidence of the content of the telephone calls that the defendant made using the personal identification numbers of other inmates-would be relevant, at least, to the defendant's motive for committing identity theft. Nevertheless, we could not conclude that that evidence would very likely have been admitted 'at a trial in which defendant was charged only with identity theft' because its probative value might have been relatively low in light of the other available evidence of identity theft, and its risk of unfair prejudice would be comparatively high."
286 Or. App. at 772, 401 P.3d 1188 (quoting Poston , 277 Or. App. at 146, 370 P.3d 904 ). The same analysis holds here. Although some theories of relevance might be conceptualized, we cannot conclude that *273 such evidence would be admitted given the probative value in comparison to the risk of unfair prejudice.
Convictions on Counts 6, 8, 9, and 10 reversed; otherwise affirmed.

With regard to the remaining counts, either the jury acquitted defendant or the count was dismissed.

The victim later testified that defendant had not forced his way into the apartment, and said she had lied in her statement to the officer out of embarrassment.