Argued and submitted May 30, 2019; in Case No. 16CR68675, reversed and remanded, in Case No. 16CR75862, convictions on Counts 3 to 6 reversed and remanded, otherwise affirmed; in Case No. 17CR12608, conviction on Count 1 reversed and remanded, remanded for resentencing, otherwise affirmed
January 21, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL BENJAMIN SMITH,
aka Michael Benjamen Smith,
*Defendant-Appellant.*

Marion County Circuit Court
16CR68675, 16CR75862, 17CR12608;
A166335 (Control), A166336, A166337

481 P3d 363

Defendant was charged with multiple offenses in three separate cases arising from three separate incidents. Under ORS 132.560, the trial court consolidated the charging instruments and joined the charges for trial—over defendant's objection—on the basis that the offenses were connected together or constituted parts of a common scheme or plan. After a jury trial, defendant was found guilty of 10 offenses, including five offenses on which the jury returned nonunanimous verdicts. Defendant appeals the resulting judgment, challenging both the joinder of the charges for trial and the instruction to the jury that it could find defendant guilty by nonunanimous verdict. *Held*: The trial court erred by accepting nonunanimous verdicts on five counts. As to the remaining five counts on which defendant was convicted, the trial court erred in joining the charges, but the error was harmless with respect to two counts.

In Case No. 16CR68675, reversed and remanded. In Case No. 16CR75862, convictions on Counts 3 to 6 reversed and remanded; otherwise affirmed. In Case No. 17CR12608, conviction on Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed.

Courtland Geyer, Judge.

Meredith Allen, Deputy Public Defender, argued the cause for appellant. Also on the reply and supplemental brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services. On the opening brief were Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Erica Herb, Deputy Public Defender, Office of Public Defense Services. Michael Benjamin Smith filed the supplemental brief *pro se*.

Philip Thoennes, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Aoyagi, Judge*

AOYAGI, J.

In Case No. 16CR68675, reversed and remanded. In Case No. 16CR75862, convictions on Counts 3 to 6 reversed and remanded; otherwise affirmed. In Case No. 17CR12608, conviction on Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed.

_____

* Egan, C. J., *vice* Hadlock, J. pro tempore.

**AOYAGI, J.**

Defendant was charged with multiple offenses in three separate cases arising from three separate incidents. Under ORS 132.560, the trial court consolidated the charging instruments, joined the charges for trial, and declined to sever them, reasoning that the offenses were connected together or constituted parts of a common scheme or plan. After a jury trial, defendant was convicted of 10 offenses, including five offenses on which the jury returned nonunanimous verdicts. Defendant appeals the resulting judgment. We reverse eight convictions, affirm two convictions, and remand.

FACTS

In Case No. 16CR68675 ("Case 675"), defendant was charged with criminal mischief, unauthorized entry into a motor vehicle, and harassment, based on an incident on October 20, 2016. According to the state, defendant was at his girlfriend M's house when M's teenaged son E came to pick up something. E's older brother Dyer waited in the car while E went inside. Defendant, who was under the influence of methamphetamine, walked outside wearing an untied robe and carrying an umbrella. Dyer did not want to engage with defendant and stayed in the car. Defendant hit Dyer's car with the umbrella several times, damaging the car, and he jabbed Dyer in the shoulder with the umbrella through the car window. Dyer got out of the car and chased defendant into the house. M was asleep during the incident and awoke only when defendant came running through the house. Defendant escaped through M's window. The police were called, and they found defendant crawling through bushes at a nearby school.

In Case No. 16CR75862 ("Case 862"), defendant was charged with two counts of kidnapping, two counts of coercion, one count of strangulation, and one count of fourth-degree assault, based on an incident on November 25, 2016.[1] According to the state, M slept at defendant's house that night. In the wee hours, defendant, who had been smoking methamphetamine, became upset when he found a photo of

_____

[1] We omit three charges that were dismissed on the state's motion.

a naked man on M's phone. M tried to leave, but defendant closed the garage door and pushed her against a wall. For three hours, he physically prevented M from leaving the garage, and he assaulted and choked her. M finally escaped.

In Case No. 17CR12608 ("Case 608"), defendant was charged with felony eluding (in a vehicle), misdemeanor eluding (on foot), and unlawful possession of methamphetamine, based on an incident on February 25, 2017. According to the state, a sheriff's deputy, Evarts, had been trying to locate defendant for weeks because an arrest warrant had been issued in Case 862. Evarts finally located him on February 25. Upon seeing Evarts, defendant fled in his vehicle, stopped, and then fled on foot. Defendant was caught and arrested. Everts found a methamphetamine pipe on defendant's person during a search incident to arrest.

On the state's motion, the trial court consolidated the charging instruments in Cases 675 and 862 under ORS 132.560(1)(b)(C), based on the charged offenses being connected together or constituting parts of a common scheme or plan. Defendant later moved to sever, arguing that the joinder substantially prejudiced him. The court denied the severance motion and, at that time, consolidated all three cases on "common scheme or plan" grounds. Thus, the charges in Cases 675, 862, and 608 were joined for trial.

Defendant was tried to a jury. Consistent with the law at the time, the trial court instructed the jury that only 10 jurors needed to agree on a verdict. In Case 675, the jury found defendant guilty of all three charges, and no jury poll was taken. In Case 862, the jury found defendant not guilty of kidnapping; guilty of both counts of coercion by 10-2 verdicts; guilty of strangulation by an 11-1 verdict, and guilty of fourth-degree assault by a 10-2 verdict. In Case 608, the jury found defendant guilty of felony eluding by a 10-2 verdict, guilty of methamphetamine possession by a unanimous verdict, and guilty of misdemeanor eluding by a unanimous verdict.

## ANALYSIS

We first address defendant's supplemental assignments of error, in which he contends that the trial court

erred in instructing the jury that it could find him guilty by a nonunanimous verdict and in accepting the jury's verdicts thereafter.

Defendant was convicted of five serious offenses—three felonies and two Class A misdemeanors—based on nonunanimous jury verdicts: coercion (Counts 3 and 4), strangulation (Count 5), and fourth-degree assault (Count 6) in Case 862; and felony eluding (Count 1) in Case 608. Convicting a person of a serious offense based on a nonunanimous verdict violates the Sixth Amendment to the United States Constitution. *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 1396, 206 L Ed 2d 583 (2020); *see also State v. Wollam*, 306 Or App 284, 285, 473 P3d 1163 (2020) (Class A misdemeanors are serious offenses for purposes of the Sixth Amendment jury trial right). Defendant did not object to the jury instruction that only 10 jurors needed to agree on a verdict. However, the state concedes that the error is plain as to the five convictions on which the jury returned nonunanimous verdicts. We agree and exercise our discretion to correct the plain error for the reasons stated in *State v. Ulery*, 366 Or 500, 504, 464 P3d 1123 (2020).

We reach a different result as to the two convictions on which the jury returned unanimous guilty verdicts—the possession and misdemeanor eluding counts in Case 608[2]—and the three convictions as to which the jury was not polled—the three counts in Case 675. We reject defendant's Sixth Amendment challenge to those convictions. *See State v. Kincheloe*, 367 Or 335, 339, 478 P3d 507 (2020) (affirming two convictions entered on unanimous guilty verdicts, where, after being instructed incorrectly that only 10 jurors needed to agree on a verdict, the jury returned nonunanimous guilty verdicts on some charges but returned unanimous guilty verdicts on two charges); *State v. Dilallo*, 367 Or 340, 478 P3d 509 (2020) (affirming conviction, where the jury was instructed incorrectly that only 10 jurors needed to agree on a verdict but no jury poll was taken).

---

[2] Defendant states in his supplemental briefing that the jury returned nonunanimous guilty verdicts on the possession and misdemeanor eluding counts in Case 608, but the record is plain that the jury's guilty verdicts were unanimous on those counts.

As to those five convictions, we proceed to the issue of whether the charges were properly joined, as defendant claims that they were not. When multiple offenses are alleged to have been committed by the same person, ORS 132.560 allows the charges to be joined in three circumstances, one of which is when the charged offenses are based on "two or more acts or transactions connected together or constituting parts of a common scheme or plan." ORS 132.560(1)(b)(C). The charges may be joined *ab initio*, or separate charging instruments may be consolidated to effectuate joinder. ORS 132.560(2). The purpose of the joinder statute is to "reduce the occurrence of multiple trials for multiple related crimes committed by a single defendant." *State v. Dewhitt*, 276 Or App 373, 382, 368 P3d 27, *rev den*, 359 Or 667 (2016). "If a defendant challenges the legality of joinder (that is, raises the issue of misjoinder), the court must first determine whether the charges meet any of the independently sufficient bases for joinder listed in ORS 132.560(1)(b)(A) to (C)." *State v. Strouse*, 276 Or App 392, 400, 366 P3d 1185, *rev den*, 360 Or 236 (2016). We broadly construe the joinder statute in favor of initial joinder. *State v. Staley*, 142 Or App 583, 589, 923 P2d 650 (1996), *rev den*, 324 Or 560 (1997). Whether charges are properly joined is "a legal determination subject to review for errors of law." *Dewhitt*, 276 Or App at 380.

Under ORS 132.560(1)(b)(C)—the subparagraph that allows joinder of charges based on two or more acts or transactions connected together or constituting parts of a common scheme or plan—joinder is permitted "if the joined counts are logically related, and there is a large area of overlapping proof between them." *Dewhitt*, 276 Or App at 383 (internal quotation marks and alterations omitted). Conversely, it is not permitted where the charged offenses "may somehow be tangentially related, but, for all practical purposes, are factually alien to each other, and where the overlapping evidence is very slight." *Id.* at 384 (internal quotation marks omitted).

We agree with defendant that the three charging instruments at issue here were misjoined under ORS 132.560(1)(b)(C). More specifically, we conclude that the

charges in Cases 675 and 862 were misjoined, at which point joining Case 608 did nothing to ameliorate that problem.

In *State v. Johnson*, 199 Or App 305, 307, 111 P3d 784, *rev den*, 339 Or 701 (2005), the defendant was charged with felony murder after an incident in which he allegedly robbed the victim of methamphetamine and money and then killed him. Three weeks after the murder, the police found marijuana growing in the defendant's apartment, and he was charged with drug manufacturing. *Id*. Both charges were included in a single charging instrument. *Id*. The defendant sought to sever the drug charge, arguing that joinder was improper, but the trial court denied the motion. *Id*. On appeal, we reversed, rejecting the state's argument that the two charges were connected and could be joined under ORS 132.560(1)(b)(C) because both involved the "drug trade." *Id*. at 317-18. There were "no interlocking facts that would suggest a logical relationship between the two offenses," such as evidence that the victim was marketing defendant's marijuana as part of his own drug operation. *Id*. To allow joinder in such circumstances "would stretch the meaning of the phrases 'connected together' or 'common scheme or plan' to a level of generality that equates the expansive standard for relevance in OEC 401 with the connectedness between offenses required in ORS 132.560(1)(b)(C), rendering almost useless the tests in subparagraphs (1)(b)(A) and (1)(b)(B)." *Id*. at 316 (citation omitted).

In *State v. Keith*, 294 Or App 265, 267-68, 431 P3d 94 (2018), *adh'd to as modified on recons*, 299 Or App 355, 450 P3d 1034 (2019), the defendant allegedly assaulted his girlfriend on November 22, 2014, and January 18, 2015. On January 19, 2015, while investigating the second incident, the police met the defendant at his storage unit and arrested him on an outstanding warrant related to the first incident. *Id*. at 268. The police found a methamphetamine pipe on the defendant during his arrest, which led to a possession charge. *Id*. The trial court joined the charges, reasoning, as to the possession charge, that the defendant's substance abuse was generally relevant, including because the victim would testify to his being under the influence of methamphetamine during the January 18 incident. *Id*. We reversed,

holding that the possession charge was insufficiently connected to the other charges to permit joinder. *Id*. at 270. There was no temporal, spatial, or investigatory nexus between the offenses, no perpetuation of criminal activity from a prior incident, no substantial overlap of material witnesses, and no overlapping proof. *Id*. at 270-71.

By contrast, charges were properly joined in *State v. Taylor*, 364 Or 364, 373, 434 P3d 331 (2019), where the defendant planned to commit a series of bank robberies, committed two bank robberies in June and August in furtherance of that plan, and was charged with numerous offenses that all arose from the bank robberies. In *Dewhitt*, 276 Or App at 375-76, 386, assault and drug charges were properly joined, where the police discovered marijuana in the defendant's backpack while investigating his assault on his girlfriend, because the charges were temporally and spatially related, the evidence for both sets of charges was discovered in the same search, and the same witnesses would testify to both sets of charges. In *State v. Wittwer*, 214 Or App 459, 461, 463-64, 166 P3d 564 (2007), charges related to two domestic-violence incidents against the same victim on May 10 and May 25 and a charge for the defendant's failure to appear in court on May 14 were properly joined, because the May 14 and May 25 incidents both stemmed from defendant's plan to avoid responsibility for the May 10 incident, such that the charges were all logically related and involved substantial overlapping proof.

This case is more like *Johnson* and *Keith*. Defendant's alleged offenses against Dyer in October are not logically related to his alleged offenses against M in November. The two incidents involved different victims and took place over a month apart at different locations. Although some contextual evidence might be admissible as to both sets of charges, any overlapping evidence would be slight. In arguing otherwise, the state describes M as both the victim in Case 862 and a "key witness" in Case 675, and it asserts that M's relationship with defendant, her "experiences as both victim and witness," and her understanding as to "why defendant behaved the way that he did" is the "link" between the two cases. We are unpersuaded. M was asleep during most of the incident that gave rise to the charges

in Case 675, and she did not witness any criminal activity. If one overlapping witness might justify joining charges in some case, it is not this one. The state's argument to the contrary tips toward suggesting that the cases could be joined because M knows defendant well and can testify to his propensities—which is not a proper basis for statutory joinder.

Given that the charges in Cases 675 and 862 were misjoined, we need not separately analyze the consolidation of Case 608 with Cases 675 and 862, except insofar as the state briefly suggests that any and all outstanding charges could have motivated defendant to elude the police, thus connecting the three cases. We reject the idea that, as soon as a defendant is charged with eluding the police, all outstanding criminal charges that existed against him at the time of the alleged eluding may be joined in a single trial on the theory that any and all existing charges could have been his motive for eluding. At least on this record, that approach "would stretch the meaning of the phrases 'connected together' or 'common scheme or plan' to a level of generality that equates the expansive standard for relevance in OEC 401 with the connectedness between offenses required in ORS 132.560 (1)(b)(C)." *Johnson*, 199 Or App at 316 (citation omitted).

We therefore conclude that it was error to try together the charges in Cases 675, 862, and 608. The next question is whether that error was harmless, *i.e.*, whether there is little likelihood that it affected the jury's verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (precluding reversal where error was harmless). To assess harmlessness, we consider whether the misjoinder led to the admission of evidence that would not have been admissible but for the joinder and, if so, whether that evidence affected the verdict. *State v. Poston*, 277 Or App 137, 145, 370 P3d 904 (2016), *adh'd to on recons*, 285 Or App 750, 399 P3d 488, *rev den*, 361 Or 886 (2017). We also consider, as relevant, other ways in which misjoinder can prejudice a defendant, such as "if the defendant would testify regarding some charges but not others, if the defendant's defenses to the charges could be viewed as inconsistent, if the evidence of one charge might improperly influence the jury's verdicts on other charges, or

if the evidence could confuse the jury." *State v. Warren*, 364 Or 105, 132-33, 430 P3d 1036 (2018).

Defendant argues that the error was not harmless, because the evidence was not cross-admissible and presenting evidence on so many charges at once risked the jury relying on propensity inferences to convict him on charges on which it might otherwise acquit. In response, the state asserts that at least some of the evidence was cross-admissible and that the jury was unlikely to make propensity inferences because the state did not argue affirmatively for propensity inferences (having been specifically cautioned by the trial court not to do so). We focus our discussion on the five convictions that we have not already reversed on Sixth Amendment grounds: the three charges in Case 675 (the umbrella incident) and the possession and misdemeanor eluding charges in Case 608 (the eluding incident).

It can be difficult to assess harmlessness with respect to misjoinder, because, "by relying on multitiered assumptions about hypothetical trials, we encounter increasing difficulty in determining the likely effect of evidence and, accordingly, in concluding whether, as a matter of law, there is little likelihood that the evidence would have affected an imagined verdict." *State v. Walsh*, 288 Or App 331, 337, 406 P3d 152 (2017), *rev den*, 364 Or 680 (2019). Here, ultimately, we cannot say that there is little likelihood that the misjoinder affected the jury's verdict as to the charges in Case 675, given the evidence the jury heard that it would not have heard but for the improper joinder, particularly the evidence from Case 862. Although the state did not make express propensity arguments to the jury, we are unpersuaded that that alone ensured that the jury would not be influenced by the other evidence in reaching its verdict.

As we have recognized, it is certainly possible that, in a particular case, otherwise inadmissible evidence introduced to prove improperly joined charges "might be so benign that its admission has little likelihood of affecting the verdict on the other charge or charges." *State v. Clardy*, 286 Or App 745, 773 n 8, 401 P3d 1188, *adh'd to as modified on recons*, 288 Or App 163, 406 P3d 219 (2017), *rev den*, 364 Or 680 (2019). "However, because evidence introduced

to prove improperly joined charges will usually involve other criminal acts by the defendant, such cases may be rare." *Id.*; *see also, e.g.*, *State v. Williams*, 357 Or 1, 20, 346 P3d 455 (2015) (noting that admitting evidence of a defendant's other bad acts, particularly when it lacks legitimate probative value, presents a "substantial" risk "that the jury may conclude improperly that the defendant has acted in accordance with past acts on the occasion of the charged crime"). As to the charges in Case 675, this is not that rare case. The key evidence from Case 862 would not have been admissible in a trial in Case 675 (or vice versa) and that evidence was far from benign. The misjoinder therefore was not harmless as to the charges in Case 675.

We reach a different conclusion as to the possession and misdemeanor eluding charges in Case 608. If Case 608 had been tried separately, at least some evidence regarding the outstanding charges against defendant would have been admissible as evidence that he knowingly fled the police. *See* ORS 811.540(1)(b)(A)-(B) (defining offense of eluding as requiring that the person "*knowingly* flees or attempts to elude" a police officer (emphasis added)); *State v. George*, 263 Or App 642, 645-46, 330 P3d 1239 (2014) (the offense of eluding "is complete when, given a signal to stop, an individual knowingly continues and avoids compliance with a pursuing officer"). Defendant cites no authority for his bald assertion otherwise.

Thus, some evidence of at least the charges from the November incident likely would have come to the jury's attention in any trial on the charges in Case 608.[3] Defendant recognizes that the November incident is far more potentially damning in a jury's eyes than the October incident. Additional considerations also distinguish the charges in Case 608. They are significantly different in character from the charges in Cases 675 and 862, reducing the likelihood that evidence from the other cases might improperly influence the jury's verdicts on the charges in Case 608. Also, the charges in Case 608 were less dependent on credibility

---

[3] We do not address whether the charges in Cases 862 and 608 could have been properly joined, without those in Case 675, because Cases 675 and 862 had already been consolidated when Case 608 was added, and we see no reason to speculate as to how the case may be retried on remand.

findings than the other charges, because the evidence consisted solely of the testimony of two law enforcement officers and a police video of defendant's actions that was played for the jury. Finally, the possession and misdemeanor eluding charges in Case 608 were the only charges among the nine charges in Cases 862 and 608 on which the otherwise-divided jury returned unanimous guilty verdicts. On the whole, there is little likelihood that the misjoinder affected the jury's verdicts on the possession and misdemeanor eluding charges in Case 608.

We therefore conclude that the misjoinder was reversible error as to defendant's convictions in Case 675 but not as to his possession and misdemeanor eluding convictions in Case 608. Further, as to the possession and misdemeanor eluding convictions in Case 608, we reject without discussion defendant's remaining assignments of error, including his *pro se* assignments of error, and affirm those two convictions.

In Case No. 16CR68675, reversed and remanded. In Case No. 16CR75862, convictions on Counts 3 to 6 reversed and remanded; otherwise affirmed. In Case No. 17CR12608, conviction on Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed.