301

Argued and submitted April 30, reversed November 28, 2007

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RUBY DARLENE McCROREY,
*Defendant-Appellant.*

Washington County Circuit Court
D042233M; A127248

172 P3d 271

Kristin A. Carveth, Deputy Public Defender, argued the cause for appellant. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Rolf C. Moan, Assistant Attorney General.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

ROSENBLUM, J.

## ROSENBLUM, J.

Defendant appeals a conviction, following a bench trial, for initiating a false report in violation of ORS 162.375. She argues that the trial court erred by denying her motion for a judgment of acquittal. We conclude that the trial court erroneously interpreted the statute and that the evidence presented by the state was insufficient to support defendant's conviction. Accordingly, we reverse.

The material facts are undisputed. Defendant's daughter, Crystal Engle, was driving without a license when she was struck by a hit-and-run driver. The next day, Officer Kurfess was dispatched to the home that Engle and defendant shared.[1] Defendant, who was not in fact in the car at the time of the accident, told Kurfess that, while she was driving with her daughter as a passenger, they had been struck by a red medium-sized car. She also told Kurfess that her daughter would be able to give him more information.

Kurfess located and interviewed Engle. At first, she told him that her mother was the driver and that she was the passenger at the time of the accident. Engle described the hit-and-run car, but when Kurfess located the car that Engle had identified, he saw no evidence that it had been involved in a collision. Kurfess interviewed the passenger of that car and learned that it had not been involved in the accident but that the driver had stopped to check on Engle after the accident. When Kurfess confronted Engle with that information, she admitted that she had, in fact, been the driver of the car that was hit.

Kurfess contacted defendant a second time and asked her who had been driving when the accident occurred. When Kurfess confronted defendant with Engle's admission, she confirmed that Engle had been driving and explained that she had lied to protect Engle.

Defendant was charged with violating ORS 162.375 by knowingly initiating a false report. The case was tried to

---

[1] The record does not reveal who contacted the police or the content of that communication.

the court, and the state called Engle and Kurfess as witnesses. Engle testified that she "believe[d]" that her mother had suggested that they tell the police that defendant had been driving so that Engle would not be cited for driving without a license. Defendant presented no evidence and moved for a judgment of acquittal. She argued that her conduct did not fall within the ambit of the statute because, although she gave the officer false information about the identity of the driver of the victim vehicle after he contacted her, she initially reported a hit-and-run accident that had, in fact, occurred.[2]

Based on Kurfess's testimony, the trial court found that an actual hit-and-run accident had occurred and declined to convict defendant for lying about driving Engle's car. Nevertheless, the trial court convicted defendant under the theory that she aided and abetted Engle's false identification of the perpetrating vehicle after reporting the hit-and-run.[3]

On appeal, defendant contends that the trial court erred by denying her motion for judgment of acquittal because the evidence was insufficient to support a conviction

---

[2] More specifically, defendant argued:

"I think we have to go back first to the statute. In this statute the crime that we have to look at is was the false report *that was initiated,* so at its initiation it has to be false, and it's that false report which is initially false which is transmitted to the emergency response providers or the police.

"The report, based on the evidence that we have today, is that there was a hit and run. That is the evidence. That is, in itself, not a false report. * * * [T]here's no evidence that the report which was transmitted or the report *which was initiated by this defendant* was a false report. * * * The legislature[,] by using the word 'initiate', [meant] to take the very first step. Was the very first step, the initiation of whatever followed false, and what we are criminalizing is not everything that follows. *I think the initiation itself, that first act, has to be the false one.*"

We conclude that defendant's motion brought to the court's attention the issue of the proper construction of ORS 162.375, and, specifically whether the conduct charges constituted "initiating a false report," thereby adequately preserving the issue for our review. *See State v. Smith,* 184 Or App 118, 122, 55 P3d 553 (2002).

[3] The state does not defend the trial court's rationale, and we understand its silence to be an implicit concession that the evidence presented by the state did not support the trial court's theory of the crime. We accept that implicit concession but decline to discuss it in detail because we conclude that the trial court's theory, even if it had been supported by the evidence, rested on an improper construction of ORS 162.375.

under the proper construction of the statute. The state responds that "defendant's lie about the identity of the driver of her daughter's car *could* have supported [the] verdict," even though the trial court did not rely on that rationale. (Emphasis in original.) To determine whether defendant's lie to the police supports a conviction for initiating a false report, we must consider the meaning of ORS 162.375.

■        When construing a statute, we first look to the text of the statute in context and then, if necessary, to legislative history and other interpretive aids. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). The text of ORS 162.375 prohibits

> "knowingly initiat[ing] a false alarm or report which is transmitted to a fire department, law enforcement agency or other organization that deals with emergencies involving danger to life or property."

When the terms that the legislature used are not statutorily defined, we determine the legislature's intent by giving words of common usage their plain, natural, and ordinary meaning, which we discern by consulting dictionaries. The dictionary definition of "initiate" is "to begin or get going." *Webster's Third New Int'l Dictionary* 1164 (unabridged ed 2002). The term connotes proactive, as opposed to reactive, conduct. *See In re Blaylock*, 328 Or 409, 978 P2d 381 (1999) (holding that an attorney did not "initiate" contact with a potential client by responding to a third party's request that he contact the potential client).

What the dictionary definition and *Blaylock* do not tell us, however, is whether a person may be convicted under the statute for initiating a true report and later supplying false information about that true report in response to police questioning, or whether a person is culpable only if the initial report of the incident is false. Both are plausible interpretations. Accordingly, we turn to the legislative history. *See State v. Smith*, 184 Or App 118, 125, 55 P3d 553 (2002).

ORS 162.375 was enacted as part of the omnibus 1971 criminal code revisions by the Criminal Law Revision Commission. Or Laws 1971, ch 743, § 212. The subcommittee that was charged with proposing revisions to the criminal

code dealing with false alarms and reports expressly considered the very question now before us: whether the statute criminalizes a person's false oral statement made in response to a police officer investigating a crime. Minutes, Criminal Law Revision Commission, Subcommittee No 2, Sept 16, 1969, 18-19.

■        The subcommittee's first preliminary draft of the statute prohibited "knowingly * * * mak[ing] or caus[ing] to be made a false alarm or report." (Emphasis added.) As the commission minutes report, research counsel Roger Wallingford explained that proposed language represented "a further extension of [the law of perjury] by getting into the area of oral, unsworn falsification." Id. at 19. In response to that concern, the subcommittee replaced the phrase "knowingly * * * mak[ing] or caus[ing] to be made a false alarm or report" with "knowingly initiat[ing] a false alarm or report" to remove from the state's reach the witness who lies to the police while giving a statement. Id. at 19 (emphasis added). According to the commission minutes, Chief Trial Counsel Thomas D. O'Dell of the Attorney General's office introduced the word "initiate" into the statute to further clarify that it is "directed to the [report of an] emergency situation." Id. As the legislature clearly intended to exclude unsworn, oral falsifications made in response to police questioning from ORS 162.375, we conclude that a conviction under that statute must be supported by evidence that the defendant initiated the falsification, rather than mere evidence that a defendant initiated a process that later resulted in that person giving false information about a true incident to police.

■        Although the record contains evidence sufficient to support an inference that either defendant or Engle initiated the report of a hit-and-run accident, the trial court found that that report was true. We are bound by the trial court's finding that a hit-and-run accident did, in fact, occur. While there was evidence, in the form of Engle's testimony, that defendant planned to lie to police about the identity of the driver of the victim vehicle, such evidence does not support an inference that defendant gave that information as a part of the initial report. The record simply demonstrates that defendant lied while later giving a statement to the police.[4] Thus,

---

[4] Kurfess testified that defendant "said that she was driving" when he first took her statement at her home. Similarly, when describing taking defendant's

we conclude that the evidence is insufficient to demonstrate that she "initiated" a false report within the meaning of ORS 162.375.

Reversed.

.

---

statement when he returned to her home, Kurfess testified that he "asked her who was driving." Neither contact between Kurfess and the defendant supports an inference that defendant gave false information as a part of the initial report of the incident.