Argued and submitted May 3, reversed July 14, petition for review allowed November 4, 2021 (368 Or 702)
See later issue Oregon Reports

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

H. D. E.,
*Defendant-Appellant.*

Umatilla County Circuit Court
19CR07787; A171975

493 P3d 1123

Defendant reported to police that a doctor had harassed and assaulted her children in a medical office waiting room during her husband's medical appointment. Although the portion of defendant's report relating to the harassment was true, she was convicted of one count of initiating a false report, ORS 162.375, after video evidence revealed that she had lied about the assault. She appeals, arguing that the trial court erred in denying her motion for judgment of acquittal because, although the portion of the report relating the assault was false, the remaining portions were true. The state argues that the trial court correctly denied defendant's motion because any false report of a crime violates the statute. *Held*: The trial court erred in denying defendant's motion. When a report contains both true and false information, to violate ORS 162.375, the state must prove that defendant's false statements resulted in some expenditure of state resources in excess of what would have been occasioned by the true statements alone. Here, the state did not provide any evidence as to whether the assault claims resulted in a greater expenditure of resources than would have resulted from the harassment claims alone.

Reversed.

Jon S. Lieuallen, Judge.

Peter G. Klym, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

KAMINS, J.

Reversed.

**KAMINS, J.**

Defendant appeals a judgment of conviction for one count of initiating a false report, ORS 162.375. Defendant reported to police that a doctor had harassed and assaulted her children in a medical office waiting room during defendant's husband's medical appointment. The trial court concluded that, although the doctor may have harassed the children and engaged in disorderly conduct, the allegations of assault were unfounded, and the trial court therefore convicted defendant. Defendant contends that the trial court should have granted her motion for judgment of acquittal, because much of the report, specifically the allegation that the doctor had harassed the children, was true.[1] We agree with defendant and therefore reverse.

On August 27, 2018, defendant and her four children were waiting in the reception area of a medical clinic in Hermiston for her husband to complete an appointment. One of the doctors went to the reception area to investigate a "racket" he could hear from his office. The doctor observed that several of defendant's children were "playing, just like a family would." The source of the "racket" was that one of the children was throwing Legos into their storage container "from up above." The doctor first told defendant, who was reading a magazine, to control her children. When the children continued to make noise and engage in "roughhousing," the doctor became upset and scolded the children, ordering them to sit down and behave. When the doctor bent down to pick up a toy, he "glanced off" one child's leg and the child "scuttled away." Defendant also became upset and said that she could sue, a comment to which the doctor responded with profanity.

Ten minutes after the incident, defendant called the Hermiston Police Department to report it. Officer Wallis, a patrol officer, met with defendant about 30 minutes after her call. According to Wallis, defendant reported that the doctor became upset that her children were being a little loud and

---

[1] Defendant also argues that the trial court erred in admitting evidence that she had allegedly made false statements on a prior occasion for financial gain. Given our disposition on defendant's first argument, we need not reach that issue.

got inches from their faces, yelling profanities at them and ordering them to clean up and sit down. Defendant also told Wallis that the doctor had forcefully shoved one of her children and pushed her son into a refrigerator, causing a possible injury. Defendant demanded that the doctor be arrested for assault. The next day, defendant told Wallis that she took her son to the hospital and that he was suffering from a contusion and a possible concussion.

Surveillance video from the medical waiting room revealed that the doctor was visibly angry when communicating with defendant and her children, but refuted defendant's claim of any shoves to the children. Additionally, Wallis's independent observation, as documented by photographs and corroborated by the emergency room nurse, did not indicate any injury to the child, although the chart notes indicated the presence of a contusion.

Defendant was charged with initiating a false report, in violation of ORS 162.375. At the close of the state's case, defendant moved for a judgment of acquittal, arguing that the evidence was insufficient to prove that she had filed a false report, because the portions of the report relating to the crime of harassment were true, even if the description of the assault was inaccurate. The trial court denied the motion, and, after a bench trial, found defendant guilty. The court observed that the guilty verdict was

> "not for calling in and saying there's issues or [the doctor] was yelling and pointing. *** If it was the other, just that he was harassing my children, yelling and screaming at us, disorderly conduct-type stuff, I wouldn't find you had violated the law. But it's mostly because of the assaultive nature, the different allegations there, which I don't think there's any—I haven't heard any facts to support them."

On appeal, defendant renews her argument that she could not be convicted of initiating a false report, because much of the report was true. The state responds that, regardless of whether the portion of the report relating to harassment was true, the portion relating to assault—a separate crime from harassment—was not, and defendant was therefore guilty of initiating a false report as to that crime.

"We review the trial court's ruling on defendant's motion for judgment of acquittal to determine whether, viewing the facts and reasonable inferences that may be drawn from those facts in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. Borden*, 307 Or App 526, 528, 476 P3d 979 (2020).

The crime of initiating a false report requires that a person "knowingly initiate[] a false alarm or report that is transmitted to a fire department, law enforcement agency or other organization that deals with emergencies involving danger to life or property." ORS 162.375. A person "initiates" a false report if the person's communication "begin[s] or mark[s] the beginning of informing the organization about the circumstances that are the subject of the report." *State v. Branch*, 362 Or 351, 362, 408 P3d 1035 (2018) (internal quotation marks omitted). For purposes of the statute, a "report" is "a communication that informs a law enforcement agency or other emergency organization that a situation exists of a type to which the organization would respond with an expenditure of resources." *Id*.

The statute does not criminalize *any* false statement to police, it only prohibits those false statements that would initiate an investigation. *State v. McCrorey*, 216 Or App 301, 306, 172 P3d 271 (2007). Specifically, under *Branch*, when a criminal investigation is already underway, a person does not violate ORS 162.375 "by falsely confirming or denying knowledge of a report or alarm that already is under investigation, or by falsely conveying information about circumstances to which the agency would be unlikely to devote resources, except for whatever relevance the information may have to an existing criminal investigation." *Branch*, 362 Or at 362.

Correlatively, when a criminal investigation is not yet underway at the time of a report containing both true and false statements, to prove that a defendant initiated a false report through the inclusion of the false statements, the state must prove either that (1) the false statements resulted in an expenditure of investigatory resources beyond that which would have resulted based on the true

statements alone; or (2) if no investigation occurs, that the false statements would have "start[ed] the ball rolling" on an expenditure of resources beyond that which would have been triggered by the true statements alone. *See id.* at 366 (explaining that a false statement "initiates" an investigation if it "starts the ball rolling" on a law enforcement response to a newly reported crime). This is in keeping with the remedy supplied by the legislature in the statute. The legislature provided that a person convicted of initiating a false report must pay the law enforcement costs in responding to the report. ORS 162.375(3)(a). There is no indication, however, that the legislature intended to impose financial responsibility for law enforcement costs that would have resulted absent the false statements, indicating that the legislature did not intend to criminalize those statements that do not, or would not, add to the expenditure of resources occasioned by true information.

There is no dispute that defendant "initiated" a report to the Hermiston Police Department, because it "marked the beginning" of the police investigation. There is also no dispute, for purposes of our standard of review, that the report contained some false information and some true information. Defendant accurately reported facts that could constitute the crime of harassment[2] and falsely reported facts that could constitute the crime of assault.

Accordingly, the only remaining question is whether the false statements contained in defendant's report concerned a situation to which the police department "would respond with an expenditure of resources" beyond the expenditure of resources triggered by the true statements. Here, the record undisputedly reflects that the report defendant initiated actually resulted in a law enforcement investigation. However, because the legislature only intended to punish false statements that would trigger the expenditure of law enforcement resources other than those triggered by the true statements, the question is whether defendant's false statements did that in this case. Specifically,

---

[2] As relevant here, a person commits the crime of harassment by "(A) [s]ubjecting *** [another] person to offensive physical contact; or (B) [p]ublicly insulting *** [another] person by abusive words or gestures in a manner intended and likely to provoke a violent response." ORS 166.065(1)(a).

a rational trier of fact could find that element satisfied if the record permits the conclusion that, but for the false part of defendant's report—that the doctor had assaulted her children—the police investigation either would not have occurred or, instead, would have entailed a lesser expenditure of resources. By contrast, if the true statements in defendant's report—that the doctor approached her children closely, yelled at them, and touched one of them—would have triggered the same investigation absent the inclusion of the assault information, then the false information simply provided false details in an otherwise valid report.

The record is silent on whether the harassment information would justify a law enforcement response different from the assault information. The state, which bears the burden to prove each element of the crime, proffered no evidence as to how the law enforcement response could be parsed. Indeed, Officer Wallis testified that his initial thought in response to defendant's report was that, if a crime was committed, it was the crime of harassment, not assault. Despite that belief, Wallis continued to expend law enforcement resources to investigate that crime. Given the absence of any evidence that defendant's false statements would generally lead to, or actually caused, the expenditure of any resources different from what would have been expended as a result of the truthful information, a rational trier of fact could not conclude that defendant's false statements on their own resulted in a law enforcement response different in scope from that which would have resulted from the true statements on their own. Accordingly, the trial court erred in denying the motion for judgment of acquittal.

The state argues that it does not matter if defendant accurately reported facts supporting the crime of harassment, because she also reported a separate crime of assault, and any false report of a crime violates the statute. However, under *Branch*, the critical inquiry is whether the false information would trigger law enforcement to expend resources; it does not depend on whether the person making the report accurately named the crime. In *Branch*, police located the driver in a suspected hit and run who falsely claimed he had left the scene of the accident because the other driver had pointed a gun at him. 362 Or at 354.

Although the driver did not initiate the involvement of law enforcement because police were already investigating the hit and run, his false information triggered a new investigation of a separate crime and therefore violated ORS 162.375. *Id*. at 361. Conversely, any false statement the driver made about his own intoxication—even if it alerted the police to the crime of driving while intoxicated—would not violate the statute, because it related to an ongoing investigation of the hit and run. *Id*. Many reports could describe facts that constitute more than one crime, some of which prove to be false. For example, an accurate report of theft that included the false detail that the suspect was trespassing would not violate the false reporting statute, because the expenditure of resources would already have been initiated by the theft report.

Under *Branch*, the question is not whether the false details in an otherwise true report of a crime themselves contain the elements of a crime, but whether false allegations initiating an investigation would trigger the expenditure of additional law enforcement resources beyond those expended based on true information in the report. In cases where the "false report" contains both true and false information that could trigger a law enforcement response, the state must prove that the false statements either did (or would have) "gotten the ball rolling" on the expenditure of resources. Because the record does not contain any such evidence, defendant was entitled to a judgment of acquittal.

Reversed.